## George W. Cosper v. T. B. Nesbit.

1. Contract—*Evidence to Explain Ambiguity.* Where an ambiguous expression is used in a contract, extrinsic facts and circumstances showing the practical interpretation placed upon it by the parties may be received in evidence.

2. Construction *of Contract, by Court — by Jury.* While generally it is the province of the court to construe written contracts, yet where a term is used in a technical or peculiar sense, the question of what that sense is, or what the intention and meaning of the parties were, may be submitted to a jury upon competent evidence and proper instructions; but even if the court alone should have given a construction to the term, and it clearly appears that the jury has put upon it a correct construction, and such as the court should have given it, the submission of the question to the jury is not a sufficient ground for a reversal.

3. ——— *Items, Barred.* Under the evidence, it is *held* that certain items of indebtedness claimed by plaintiff in error were barred by the statute of limitations.

*Error from Chase District Court.*

T. B. Nesbit brought an action against *George W. Cosper* before a justice of the peace, on July 1, 1886, to recover $49.25, alleged to be due on a written contract, of which the following is a copy:

"Article of agreement entered into on this 2d day of November, 1882, between T. B. Nesbit, of the town of Bazaar, Chase county, Kansas, of the first part, and Geo. W. Cosper,

of the same county and state aforesaid, of the second part, witnesseth: The party of the first part, in consideration of the sum of $4,900, to him in hand paid by the party of the second part, agrees to sell all of his farm, situate in the town of Bazaar, county and state aforesaid, containing two hundred and forty acres of land, to the party of the second part. The party of the second part, on the 20th day of January, 1883, pays to the party of the first part the sum of $200, and on the 1st day of March, 1883, gives a chattel mortgage to the party of the first part on $3,000 worth of stock for the amount of $1,700, said mortgage to be due one year from the 1st day of March, 1883, at 10 per cent. interest, and also the party of the second part agrees to assume the mortgage of $1,750 now on the said farm, and give an additional mortgage of $1,250 on said farm, or if the party of the first part secures a loan of said $1,250 on the said farm, the party of the second part agrees to pay one-half of the expense of obtaining said loan and assume said loan. The party of the first part agrees to return all wood and timber now unsold on said farm, except what he wishes for his own use. The party of the first part also agrees to allow the party of the second part to cut fire-wood and make posts on said farm.

"In witness whereof, the said parties hereto set their hands the day and year first above mentioned.

T. B. NESBIT,

"Witness: BELLE WHITE,      GEORGE W. COSPER.
      H. G. WHITE."

*Nesbit* alleged that in pursuance of the contract he secured a loan of $1,250 on the farm sold, at an expense of $98.50, and that *Cosper* had failed to pay one-half of the expense, as he had agreed to do. As a second cause of action, *Nesbit* alleged that *Cosper* was indebted to him for several items, which in the aggregate amounted to $41.23. After a trial and judgment before the justice of the peace, the case was transferred by appeal to the district court, where it was tried before a jury, and resulted in a verdict in favor of *Nesbit* for $69.31. *Cosper* alleges error.

*King & Kelley*, for plaintiff in error.

*Madden Bros.*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: The principal controversy in the case arises upon that provision of the written contract in respect to obtaining the $1,250 loan, and the expense of securing it. Nesbit sold the farm of two hundred and forty acres to Cosper for the stated consideration of $4,900, of which $200 was to be paid in cash, an existing mortgage on the land of $1,750 was to be assumed by Cosper, a payment of $1,700 was to be made on March 1, 1884, to be secured by a chattel mortgage on cattle of the value of $3,000; and for the remainder of the consideration Cosper was to give an additional mortgage of $1,250 on the farm, or if Nesbit secured a loan of $1,250, Cosper agreed to assume the loan and pay one-half of the expense of obtaining it. After the making of the contract, which was on November 2, 1882, Nesbit employed an agent to obtain a loan upon the land, and he succeeded in doing so about April 1, 1883. Prior to that time Nesbit had executed a deed for the farm to Cosper, and this, with other papers, had been deposited in a bank to await the completion of the contract. As soon as the agent employed by Nesbit had procured the money, he made out a written application and mortgage, which were executed by Cosper, and the money was paid over to Nesbit, less the sum of $98.50, which was the expense incurred by the agent in obtaining the loan. The title papers were then delivered and the contract completed, but although Cosper had stated that he would pay one-half of the expense, he finally refused to do so, and this action was brought.

It is claimed by Cosper that the agreement was, that if Nesbit secured the loan before the execution of the deed, and negotiated the mortgage in his own name, that then he was to assume the loan and pay one-half of the expense for securing it; but that as the loan was not secured by Nesbit in that way, and as Cosper executed the mortgage upon the land and turned the money over to the plaintiff as payment, that the loan was therefore not secured by Nesbit, and hence there was no liability under the contract.

Nesbit contends that he was the active agent or instrumentality in securing the loan, that he helped to negotiate it, and that the application and mortgage were executed by Cosper simply because he, Nesbit, had prior to that time executed a deed of the farm to Cosper and placed the same in a depository to await the completion of the contract.

After the evidence had been submitted, the court explained the contract to the jury, and then left it to them to determine the meaning of the words used in the contract "secure a loan," stating to them that "we must give that expression the same meaning that the parties to the agreement have," and that they might take into account the situation of the parties, their conversations and conduct at and during the making of the contract, as well as their conversations and conduct subsequent to that time, in determining the sense in which the parties used the expression. Two meanings were claimed for the expression, and the court advised the jury what interpretation should be placed upon the contract if it was used in one sense, and what if used in the other.

It is claimed that the court erred in submitting to the jury the question of what the parties understood and meant by the expression. In general, it is the province of the court to construe written contracts, but where peculiar expressions are used, it may be left to the jury to determine by the aid of extrinsic circumstances and facts what sense was intended by the parties. Where the language of a contract contains an expression which is ambiguous, or one used in a peculiar sense, evidence may be properly received to show what the parties understood and intended by it. The practical interpretation of such an expression of the parties is entitled to great, if not controlling, influence. (3 Am. & Eng. Encyc. of Law, 869, and cases cited in note.) The evidence in the record shows that both parties had the same understanding of this expression, and used it in the sense claimed by Nesbit. On two different occasions Cosper admitted his indebtedness for one-half of the expense of obtaining the loan. He knew that Nesbit had employed an agent to secure the loan; knew that

the money was secured by that agent, and at the request of Nesbit; he waited until the agent procured the money, and at the request of the agent executed the necessary papers to secure its payment. The mortgage was evidently executed by him, because of the fact that during the pendency of these negotiations a deed from Nesbit to Cosper had been executed and placed on deposit. Upon the testimony, which was ample, the jury found specially that the loan was obtained at the solicitation of Nesbit, and the money was in the possession of the agent before Cosper took any steps in the matter.

We think no mistake was made in the construction placed upon the contract; and even if it is such an one as should have been construed by the court alone, it is so clear that a correct construction has been given to it that the submission of the question to the jury is not a sufficient ground for a reversal. (*Germania Ins. Co. v. Curran*, 8 Kas. 10.)

It was also claimed that the contract was abandoned and a different one subsequently made. There was a modification of the provision concerning the $1,700 payment, due in March, 1884, but the finding of the jury settled that there was no change in the $1,250 provision in controversy.

The instruction requested, that Nesbit's claim for $49.25 was barred by the three-years' statute of limitation, was properly refused. The claim arose under the written contract, and was not barred until five years after a cause of action had accrued.

Complaint is made about the refusal of the court to permit plaintiff in error to show certain items of indebtedness from Nesbit to him; but these were not mentioned in the contract, were not in writing, and were barred by the statute of limitations.

We think substantial justice was done in the case, and that no material error was committed. Judgment affirmed.

All the Justices concurring.