## T. F. SEYMOUR v. ARMSTRONG & KASSEBAUM.

### No. 11,875.* (64 Pac. 612.)

1. CONTRACT—*Offer in Advertisement Accepted.* A contract may originate in an advertisement or offer addressed to the public generally, and if the offer be accepted by any one in good faith, without qualifications or conditions, it will be sufficient to convert it into a binding obligation.

2. ——— *Unconditional Acceptance Necessary.* If the acceptor affix conditions to his acceptance not comprehended in the proposal, there can be no agreement without the assent of the proposer to such conditions.

3. ——— *Trade Words and Phrases.* If persons carrying on a trade or business give to words and phrases a technical or peculiar meaning, they will be presumed to have contracted with reference to such meaning or usage, unless the contrary appears.

4. ——— *Evidence of Peculiar Meaning Admissible.* Where a term employed in a written contract has a meaning different from the ordinary meaning when used in connection with a trade or business, evidence is admissible to show such meaning and the sense in which it was used by the parties.

Error from court of appeals, northern department; JOHN H. MAHAN, ABIJAH WELLS, and SAM'L W. MC-ELROY, judges. Opinion filed April 6, 1901. *In banc.* Affirmed.

*David Martin*, and *J. A. Rosen*, for plaintiff in error.
*Isenhart & Alexander*, for defendants in error.

---

*For opinion by court of appeals, see 10 Kan. App. —, 61 Pac. 675.—REP.

The opinion of the court was delivered by

JOHNSTON, J. : This was an action to recover damages for the breach of an alleged contract.   On February 15, 1896, Armstrong & Kassebaum, commission merchants of Topeka, inserted an advertisement in a weekly newspaper, which, among other things, contained the following proposition :

"We. will pay 10½ cents net, Topeka, for all fresh eggs shipped us to arrive here by February 22.   Acceptance of our bid with number of cases stated to be sent by February 20."

On February 20, 1896, T. F. Seymour, a rival commission merchant of Topeka, sent the following note to Armstrong & Kassebaum in response to their proposition :

"I accept your offer in *Merchants' Journal*, 10½ cents, Topeka, for fresh eggs, and will ship you on C. R. I. & P. R. R. 450 cases fresh eggs, to arrive on' or before February 22.   The eggs are all packed in new No. 2 whitewood cases, and I will accept fifteen cents each for them, or you can return them or new ones in place of them."

On receipt of this note, Armstrong & Kassebaum at once notified Seymour that they would not accept the eggs on the terms proposed by him.   Notwithstanding the refusal, Seymour procured a car and loaded it with eggs.   Not having a sufficient number of cases to fill the car, he found two other commission merchants who were willing to cooperate with him, and who furnished 190 of the 450 cases, which were.loaded in Topeka, only a few hundred feet away from the place of business of Armstrong & Kassebaum, sealed up, and then pushed a short distance over to their business house.   They refused to receive the eggs, and Sey-

46—62 KAN.

mour shipped them to Philadelphia, where they were sold for $391.83 less than they would have brought at the price named in Seymour's note of acceptance. For this amount the present action was brought, and the plaintiff is entitled to recover, if the defendants' offer on eggs was unconditionally accepted. At the trial a verdict was returned in favor of the defendants, and the result of the general finding is that the pretended acceptance of Seymour was not unconditional, and that no contract was, in fact, made between him and the defendants.

Did the negotiations between the parties result in a contract? A contract may originate in an advertisement addressed to the public generally, and if the proposal be accepted by any one in good faith, without qualifications or conditions, the contract is complete. The fact that there was no limit as to number or quantity of eggs in the offer did not prevent an acceptance. The number or quantity was left to the determination of the acceptor, and an unconditional acceptance naming any reasonable number or quantity is sufficient to convert the offer into a binding obligation. It is essential, however, that the minds of the contracting parties come to the point of agreement—that the offer and acceptance coincide; and if they do not correspond in every material respect there is no acceptance or completed contract. In our view, the so-called acceptance of the plaintiff is not absolute and unconditional. It affixed conditions not comprehended in the proposal, and there could be no agreement without the assent of the proposer to such conditions. It is true the plaintiff agreed to furnish eggs at 10½ cents per dozen, but his acceptance required the defendant to pay fifteen cents each for the cases in which the eggs were packed or to return

the cases or new ones in place of them.  It appears from the record that, according to the usages of the business, the cases go with the eggs.

One of the grounds of complaint is that the court erred in admitting testimony as to the sense in which the word "net" was used in the negotiations between the parties, and in submitting to the jury the question of whether the offer of the defendants was accepted.  The plaintiff is hardly in a position to question the propriety of receiving evidence as to the meaning of the word "net," used in the offer and acceptance. He was the first to open an inquiry and bring out testimony as to what was meant by the term when used in connection with the sale of eggs.  Aside from that consideration, the term appears to have a meaning in connection with the business different from the ordinary meaning, and, in such case, evidence of the meaning given by usage of the trade or business is admissible.  If persons carrying on a particular trade or business give to words or phrases a technical or peculiar meaning, they will be presumed to contract with reference to the usage, unless the contrary appears.  There was abundant evidence to show that the use of the word "net," according to the usage of the business, includes the cases of eggs like the ones in question.  The witnesses stated that it means a price clear to the purchaser without commissions, cartage, or any charge for the cases.  The finding of the jury, in effect, was that it was understood and agreed that the cases went with and were included in the price quoted for the eggs, and the acceptance, therefore, did not correspond with the offer nor complete the contract.  We think that, under the circumstances, parol testimony of the sense in which the terms were used and as to what the parties intended

by them was properly received, and that the court properly charged the jury as to the elements entering into a contract. (*Cosper v. Nesbit*, 45 Kan. 457, 25 Pac. 866.) Other of the instructions are criticized, but we find nothing substantial in any of the objections made, nor in any of the grounds assigned for reversal.

The judgments of the court of appeals and of the district court will be affirmed.