JOSEY et al. v. BEAUMONT WATER-WORKS CO. (No. 36.)*

(Court of Civil Appeals of Texas. Beaumont. Jan. 14, 1916. Rehearing Denied Feb. 10, 1916.)

1. WATERS AND WATER COURSES ☞206 — PUBLIC WATER SUPPLY—LIABILITY TO THE PUBLIC BECAUSE OF FRANCHISE.

The possession of a franchise by the defendant, permitting it to lay a water main in the city's streets and furnish water to its citizens, did not, irrespective of other considerations, give a right of action in favor of a citizen for failure to furnish water.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 301; Dec. Dig. ☞206.]

2. WATERS AND WATER COURSES ☞194 — PUBLIC WATER SUPPLY—CONTRACT—DUTY TO KEEP PRIVATE LINE IN REPAIR.

Where the defendant water company was under contract with the plaintiffs to furnish them water for fire protection through their private pipe line, there being nothing in the contract, either written or verbal, which would tend to show that the defendant had any duty to perform with reference to the maintenance in good repair of said private pipe line, the duty of maintaining it in good repair was on the plaintiffs.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 280; Dec. Dig. ☞194.]

3. CUSTOMS AND USAGES ☞13 — EXPLANATION OF CONTRACT—WATER SUPPLY.

Where the plaintiffs, under a contract with defendant water company were supplied with water for fire protection through a private pipe line, which it was plaintiffs' duty to keep in repair, the defendant's practice of voluntarily notifying its patrons·of defects or leaks in their lines did not constitute a custom which would be read into the contract, and the defendant was not guilty of negligence in failing to notify the plaintiffs of the break in the line.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. §§ 25, 26; Dec. Dig. ☞13.]

4. WATERS AND WATER COURSES ☞206 — FAILURE TO FURNISH WATER—REMOTE CONSEQUENCES.

Where the defendant shut off the water which it was supplying to the plaintiffs for fire protection through a private pipe line, because of plaintiffs' failure to keep the pipe in repair, and a fire occurred which the plaintiffs were unable to check because of the lack of water, it could not be said that the defendant's failure to notify the plaintiffs that the water had been shut off was the proximate cause of the damage caused by the fire.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 301; Dec. Dig. ☞206.]

Appeal from District Court, Jefferson County; W. H. Davidson, Judge.

Suit by J. E. Josey and others against the Beaumont Waterworks Company. From a judgment for the defendant, plaintiffs appeal. Affirmed.

This suit was instituted by the plaintiffs (appellants) against the defendant (appellee) to recover the value of their buildings and other property located in the city of Beaumont, which were destroyed by fire on September 7, 1913, which plaintiffs alleged were of the reasonable value of $77,032.18. After the evidence was all in, the court instructed the jury to find for the defendant, and the jury returned a verdict for the defendant, upon which the court rendered judgment for the defendant. Plaintiffs duly objected in writing to the court's charge before it was given to the jury, and requested that the cause be submitted to the jury, which objections and request were overruled, and refused by the court, to which the plaintiffs took a bill of exceptions. Plaintiffs in due time filed a motion for new trial, which motion was by the court overruled, and plaintiffs excepted and gave notice of appeal, and in due time filed their appeal bond and perfected their appeal to this court.

By their third amended original petition filed on the 5th day of September, 1914, upon which petition the case was tried, the plaintiffs alleged that on the 7th day of September, 1913, they were engaged in the retail and ·wholesale feed business in Beaumont, Tex., and had and owned certain buildings of the value of $10,686.89; that plaintiffs had in their business machinery, mills, etc., of the reasonable value of $21,070.30; office furniture of the value of $610, and goods, wares, and merchandise on hand of

the value of $44,665. They further alleged that they owned said property in 1910, and on or about the 15th day of July of that year they entered into a contract with defendant, under and by virtue of which they would furnish the pipe and build a three-inch line from defendant's water main to their property, and defendant would connect said line with its water main and furnish plaintiffs water for fire protection until further notice. Plaintiffs further alleged that if they were mistaken in the date said contract was entered into, then they say that for two years prior to January 13, 1912, defendant furnished them water for fire protection, and that on said date they paid defendant $72 for services which had been furnished them through their line to their buildings for private fire protection, and then entered into an agreement with defendant, by virtue of which they would pay $9 per quarter, or $3 per month, and defendant would furnish them water in their line for said private fire protection until they were notified by defendant that said services would be discontinued; that said service was to be paid for either monthly or quarterly in advance or at the end of the period for which the service was rendered, or at such time and in such manner as defendant might render its bill to plaintiffs; that water should be furnished so as to protect plaintiffs' property against loss by fire, water being furnished through said private line, and permitted to remain therein and not cut off without notice to plaintiffs. They further alleged that if they were mistaken in said express contract, then there was an implied contract that water should be furnished in plaintiffs' private pipe line until such time as plaintiffs were notified by defendant that such contract would be discontinued, which contract arose by virtue of the dealings between plaintiffs and defendant, in that plaintiffs, with the knowledge and consent of defendant, built the private line, so as to secure water from defendant's main for private fire protection to their buildings; that defendant connected the same with its water main, and for four years prior to the loss of plaintiffs' property, permitted water to remain in said private fire line for the purpose of furnishing water to protect plaintiffs' property against loss by fire, rendering bill for such service at the rate of $3 per month, which bills were rendered at irregular times; that plaintiffs had paid for such service at the time of said fire; that at the time defendant disconnected or cut off said water it had money on hand sufficient for said purpose, and that by virtue of dealings between said parties, it became the implied understanding that said water would remain until plaintiffs were notified that the same was to be discontinued. Plaintiffs further allege that whether or not there was an express or implied contract, it was the duty of defendant to notify plaintiffs if it cut off the water from said private fire line; that it was its custom to so notify users of its water of any bad condition of the pipe or any leaks or breaks therein, and that plaintiffs knew of said custom, and relied thereon in their dealings with defendant, and said custom became a part of the contract between plaintiffs and defendant; that plaintiffs fully complied with their part of said contract with defendant, but defendant, on or about the 7th day of December, 1913, without notice to plaintiffs, cut off plaintiffs' private fire line, and excluded water therefrom, and on September 7, 1913, a fire occurred which destroyed all of plaintiffs' property, of the value alleged in their petition; that defendant failed to notify plaintiffs that water had been cut off from the private fire line, which it was its duty so to do, and the failure to so notify plaintiffs was the direct and proximate cause of the loss sustained by plaintiffs; that if there had been water in said line at the time said fire originated, the fire could have been extinguished, and said property saved; that plaintiffs did not know that the water had been discontinued from their private fire line until after said fire had been discovered, and they attempted to extinguish the same, and discovered for the first time that the water had been cut off from their buildings, and thereby, they had no means of extinguishing the same, causing the loss of their entire property, which would not have resulted but for the breach on the part of defendant of its contract with the plaintiffs to maintain said water in the pipe line of plaintiffs until they had been notified that it had been discontinued.

The defendant, after denying the allegations made by plaintiffs, alleged that it was its custom to furnish water only upon a written contract, and that if any contractual relation existed between plaintiffs and defendant, same rested upon said written contract, a copy of which is attached to defendant's answer. Defendant denied that it was its custom to notify owners of pipe lines of any bad condition of their pipe, but it admitted that it usually did so as a matter of accommodation, and in cases where it believed that the owner did not know of such defect, and that such notification was not given as a legal duty, but simply as one of ordinary courtesy. Defendant further alleged that under the terms of its franchise with the city of Beaumont, it was required to keep a certain amount of pressure in its pipes, and that no other service should be allowed to interfere therewith, and that it was the duty of plaintiffs to keep their private pipe line and equipment in good order, and that plaintiffs did not do so, and at the time of the fire said line was burst and open, and incapable of use, and the fire chief of the city of Beaumont required that water be cut off from said pipe line, in order to keep it from interfering

with water pressure in the city hydrants. Defendant further alleged that at the time of the fire which destroyed plaintiffs' premises and contents, same were insured in various insurance companies set out in defendant's answer; that since said fire, plaintiffs had settled with said insurance companies, and each had paid plaintiffs the amount of insurance called for in said policies, and each policy contained a provision that the company should be subrogated to the extent of any payment made to or rights of recovery by the insured for loss resulting, and such rights should be assigned to the company by the insured on receiving such payment; that the insurance companies were now owners of the plaintiffs' cause of action, and by virtue thereof plaintiffs are not entitled to recover said amount.

Plaintiffs filed their supplemental petition, in which they denied the facts alleged by defendant in its answer, and affirmatively alleged that if their pipe was burst and open at the time of the fire, it was without their fault, and they were not advised of such condition, and if such condition existed, it was known to defendant, and not known to plaintiffs, and defendant concealed from plaintiffs the fact that said pipe line was out of order, and disconnected the water therefrom, and withheld said knowledge from plaintiffs, and the plaintiffs did not know that said line was broken, or that water had been discontinued therefrom. Plaintiffs further allege that after the filing of this suit they had settled with various insurance companies, but that plaintiffs retained the right to prosecute the suit, and that each company waived the right of subrogation.

It is contended by the appellees that they were relieved of the performance of the contract with plaintiffs, by the plaintiffs rendering the contract incapable of performance by their failure to provide a pipe line to convey the water to plaintiffs' buildings, and, that the contract being rendered impossible of performance by plaintiffs, said failure absolved the defendant from any further obligation.

Greer, Nall & Bowers, of Beaumont, for appellants. Smith, Crawford & Sonfield, of Beaumont, and L. A. Carlton, of Houston, for appellee.

BROOKE, J. (after stating the facts as above). The pipe line was erected by the plaintiffs. It was a private line owned by them, and, so far as the record shows, it was broken through no fault of the defendant. Therefore the question arises whose duty it was to keep the said pipe line in repair. If it was the duty of the appellee to keep the line in repair and by its negligence in the premises the said line became broken, it would be liable. It is not alleged, neither was it proven, that there was any verbal or written contract by which the appellee agreed,

or that any duty rested upon it, to keep the said line in repair, and plaintiffs in this case are not contending that they have any right of action by virtue of any duty owing them as members of the public, arising from the franchise held by the defendant from the city of Beaumont.

[1] The fact that the Waterworks Company have had a franchise in the city of Beaumont permitting it to lay a main in its street and furnish water to its citizens would not, from that alone, give a right of action in favor of a citizen, on account of the failure to furnish water. As it was held in the case of House v. Houston Waterworks, 88 Tex. 233, 31 S. W. 179, 28 L. R. A. 532, a water taker has no such right.

In their petition the appellants allege that the company agreed and contracted to furnish the water, but they do not allege that it agreed either to keep their private line in repair, or agreed in said contract to notify them in case it should become defective. In the case of Fisher v. St. Joseph Water Co., 151 Mo. App. 530, 132 S. W. 288, the water taker installed a service, stock box, and other appliances through which water was conducted through the main line of the company to its premises. The stock box was faulty in construction, and some third party received an injury therefrom. The question of who was liable for this injury turned on the point as to whose duty it was to maintain the stock box in proper condition. It was held that the water taker received his water at the street main, and that all the appliances used in conducting the current to the premises, beginning at the street main, were owned by and were under the supervision of the water taker, and that he, and not the company, be liable for any injuries that were caused by the faulty condition. The case of Windish v. People's Natural Gas Co., 248 Pa. 236, 93 Atl. 1003, was one wherein negligence was claimed by reason of the fact that the gas company had turned gas through a defective line with knowledge of the fact that it was defective. The question of whether or not it was the duty of the gas company to repair the line came up, and it was said:

"To make the defendant company answerable in damages for failure to repair or inspect the service line from the curb to the property of plaintiff, it was necessary to allege: First, a duty in these respects; and, second, a violation of that duty. The duty to inspect was not charged, and the duty to repair the service line from the curb to house was not sustained by the evidence; but, on the contrary, the contract between the parties placed the duty of repairing this service line upon the owner, or perhaps the occupier of the premises. It certainly cannot be gainsaid that in an action to recover damages on the ground of negligence, the burden is on plaintiffs to show that defendant had a duty to perform in the first instance, and that by reason of failure to perform that duty the injuries resulted."

In the case of Ellis v. Birmingham Waterworks, 187 Ala. 552, 65 South. 805, suit was brought against a water company by a water

taker, alleging injury on account of failure to furnish water. The court said:

"The allegation that the defendant wantonly or intentionally failed to furnish water and water pressure cannot change the result as to stating a cause of action. If there was no legal duty owing by the defendant water company to the plaintiff to furnish water and water pressure, the failure of which is complained of, then a wanton or intentional failure to so furnish will not change the legal rights of the parties."

Further, the court said:

"The omission to act, however willful, is not an answerable wrong unless *there is a legal duty to act.* (Italics ours.) Wantonness, as has been said by this court, is the conscious failure by one charged with a duty to exercise due care in the discharge of that duty."

[2] There being nothing in the contract in the instant case, either written or verbal, which would tend to show that the appellee had any duty to perform with reference to the maintenance in good repair of said private pipe line, we are constrained to believe, and to so hold, that the duty of maintaining the same in good repair was upon the appellants. Fisher v. St. Joseph Water Co., 151 Mo. App. 530, 132 S. W. 288; Kosmak v. City of New York, 117 N. Y. 361, 22 N. E. 945; Leonhardt v. City of New York (Sup.) 109 N. Y. Supp. 24; Vinton Roanoke Water Co. v. City of Roanoke, 110 Va. 661, 66 S. E. 835; State v. Gosnell, 116 Wis. 606, 93 N. W. 542, 61 L. R. A. 33; Tobin v. Frankfort Water Co., 158 Ky. 348, 164 S. W. 956; Dublin Electric & Gas Co. v. Thompson, 166 S. W. 113; Windish v. People's Natural Gas Co., 248 Pa. 236, 93 Atl. 1003.

It is practically without dispute that about two weeks before the fire occurred which destroyed the building and contents, there had been an earlier fire in the hayhouse, which was destroyed, and that said private water line was at that time broken, and that by the burning of the building and hay therein down on the hydrant rising from said private line in the center of the building and extending about as high as a man's head above the floor, the said fire had broken off a part of the pipe line, and that the hose attached to the line at the time of such earlier fire was used by and under the personal direction of one of the plaintiffs. The facts further show that water flowed from this break in large volumes and was plainly visible; that this earlier fire occurred in plain daylight; that plaintiffs were both there; and that those directing the fight against the fire knew that the line was burst from seeing it, and observing the effect on the water pressure. The facts further show that plaintiffs had cleared off the premises where the building burned and had taken away the broken hydrant and section of pipe, and partially rebuilt the burned building, and it is contended by the appellee that appellants knew, or that by the use of ordinary care would have known, that their line was broken. The facts further show that on account of said private line being broken at the time of the first fire, the water, under the direction of the fire chief, was cut off from the private line to prevent its free flow from destroying the pressure in the city's mains, thus lessening their efficiency in putting out fires. The appellants, however, contend that, at the time of the making of the contract, if a contract was made, it was the custom of appellee to notify its patrons of any leak and damage in their lines when the same occurred, and appellants say that, by reason of the fact that appellee failed to give notice to them of the damage to the said private pipe line, the injury occurred, and the damage resulted, as aforesaid; that had the defendant followed the custom and told plaintiffs that the burning of the old hayhouse down on the hydrant had broken off a section of the pipe, or that said pipe was out of repair, then plaintiffs would have fixed the line in time to have prevented the damage of the next fire, and they allege, and there is proof, that they did not know of such damage. It will be noted that in their petition appellants allege that appellee agreed to furnish water, but they do not allege that either appellee agreed to keep their private line in repair or to notify them in case it should become defective. They simply claim that the company owed them a duty to tell them that the line was broken, not based on any private contract obligating the company to give such notice, but the contention is that it was the duty of the water company, aside and apart from any contract that existed between them and the waterworks company, arising from such custom.

It has been said that custom or usage would not make contracts, and that proof thereof can only be resorted to as showing the meaning of words used, and custom will not be allowed to create an obligation, inconsistent with the obligations that follow from an application of the general principles of law. In this case the Waterworks Company was furnishing water from its main line, to be taken through plaintiffs' private line into their plant. Under the law the duty was upon the plaintiff to care for its private line and keep the same in good repair; there being nothing in the contract, as alleged by the plaintiffs, creating any obligation on the part of the Waterworks Company to do so, unless it arose from this alleged custom to notify owners of damages to their pipes. If it could be shown that the Waterworks Company made a practice of notifying water takers of defective connections, we cannot see how a failure to notify in this particular case would have created an obligation where none otherwise existed. We think the testimony shows that ordinarily the Waterworks Company would call the attention of water takers to faulty or defective connections, but the record shows no case in which the Waterworks Company notified a water taker who owned a private line that the private line was broken. A custom to notify

of defects, if it could be read into the alleged contract in this case, would only be a voluntary one on the part of the appellee, and ordinary care would only be required of it in the observance thereof, and it is shown in this case, outside of the fact of the appellants being present at the burning of the hayhouse in the first instance, and that they had cleared off the premises where the said house was burned and taken away the broken hydrant, that the appellee the next day after the hayhouse burned, sent its service man to notify the plaintiffs that the water was shut off, but for some reason this message was not delivered. That the water was shut off on account of the broken pipe cannot be questioned. Mr. Flether, manager of Waterworks, testified:

"I cut the water off because the pipes were broken, and if it had not been bursted I would not have cut the water off."

In the case of Barnard v. Kellogg, 77 U. S. (10 Wall.) 383, 19 L. Ed. page 987, it is said:

"It is to be regretted that the decisions of the courts, defining what local usages may or may not do, have not been uniform. In some judicial tribunals there has been a disposition to narrow the limits of this species of evidence, in others to extend them, and on this account mainly the conflict in decision arises. But if it is hard to reconcile all the cases, it may be safely said they do not differ so much in principle, as in the application of the rules of law. The proper office of a custom or usage in trade is to ascertain and explain the meaning and intention of the parties to a contract, whether written or in parol, which could not be done without the aid of this extrinsic evidence. It does not go beyond this, and is used as a mode of interpretation on the theory that the parties knew of its existence, and contracted with reference to it. It is often employed to explain words or phrases in a contract of doubtful signification, or which may be understood in different senses, according to the subject-matter to which they are applied. But if it be inconsistent with the contract, or expressly or by necessary implication contradicts it, it cannot be received in evidence to affect it. See Notes to Wrigglesworth v. Dallison, 1 Smith's L. Cas. 670 (Doug. 200); 2 Pars. Cont. § 9, p. 535; Taylor, Ev., p. 943, and following. 'Usage,' says Lord Lyndhurst, 'may be admissible to explain what is doubtful; it is never admissible to contradict what is plain.' Brackett v. Royal Exch. Ass. Co., 2 Crompt. & J. 249. And it is well settled that usage cannot be allowed to subvert the settled rules of law. See note to Smith's L. Cases, supra. Whatever tends to unsettle the law and make it different in the different communities into which the state is divided, leads to mischievous consequences, embarrasses trade, and is against public policy. If, therefore, on a given state of facts, the rights and liabilities of the parties to a contract are fixed by the general principles of the common law, they cannot be changed by any local custom of the place where the contract was made. In this case the common law did not, on the admitted facts, imply a warranty of the good quality of the wool, and no custom in the sale of this article can be admitted to imply one. A contrary doctrine says the court, in Thompson v. Ashton, 14 Johns. 317, 'would be extremely pernicious in its consequences, and render vague and uncertain all the rules of law on the sales of chattels.'"

Also the case of McSherry v. Blanchfield, 68 Kan. 310, 75 Pac. 121, in which the court said:

"But beyond this, usage or custom cannot make a contract when the parties themselves have made none. National Bank v. Burkhardt, 100 U. S. 686, 692, 25 L. Ed. 766; Thompson v. Rigs, 5 Wall. 663, 679, 18 L. Ed. 704; Tilley v. County of Cook, 103 U. S. 155, 26 L. Ed. 374. And the defendant did not claim that technical or trade terms had been used, to which a peculiar meaning, requiring explanation, attached (Seymour v. Armstrong, 62 Kan. 723, 64 Pac. 612; Cosper v. Nesbit, 45 Kan. 457, 25 Pac. 866), or that the contract was ambiguous or indefinite or silent upon any matter (Smythe v. Parsons, 37 Kan. 79, 14 Pac. 444), or that the intention of the parties could not be ascertained from the language they employed. McCulsky v. Klosterman. 20 Or. 108. 25 Pac. 366, 10 L. R. A. 785. This is the only proper function of usage or custom. Barnard v. Kellogg, 10 Wall. 383, 390, 19 L. Ed. 987. Therefore the evidence sought to be introduced was irrelevant and immaterial."

In support of our views see, also, McGahan v. Indianapolis Natural Gas Co., 140 Ind. 335, 37 N. E. 601, 29 L. R. A. 355, 49 Am. St. Rep. 199; Pike v. Railway Co. (C. C.) 39 Fed. 255; Goodlander Mill Co. v. Standard Oil Co., 63 Fed. 400, 11 C. C. A. 253, 27 L. R. A. 583; Sickles v. Railway Co., 13 Tex. Civ. App. 434, 35 S. W. 493; House v. Houston Waterworks Co., 88 Tex. 233, 31 S. W. 179, 28 L. R. A. 532; Ellis v. Birmingham Waterworks Co., 187 Ala. 552, 65 South. 805; Hone v. Presque Isle Waterworks Co., 104 Me. 217, 71 Atl. 769, 21 L. R. A. (N. S.) 1021; Morton v. Washington L. & W. Co., 168 N. C. 582, 84 S. E. 1019; German Alliance Ins. Co. v. Home Water Co., 226 U. S. 220, 33 Sup. Ct. 32, 57 L. Ed. 195, 42 L. R. A. (N. S.) 1000; Allen & Curry Mfg. Co. v. Shreveport Waterworks Co., 113 La. 1091, 37 South. 980, 68 L. R. A. 650, 104 Am. St. Rep. 525, 2 Ann. Cas. 471.

[3, 4] The failure, therefore, of appellee to furnish water to appellants was brought about and caused by the negligence of appellants to keep their private line in repair. If said private line had been in a good state of repair, the testimony is conclusive that the water supply would not have been cut off. The failure, therefore, of the appellant to provide such pipe line rendered the alleged contract with reference to furnishing water impossible of performance. In this case we hold that there was no legal obligation resting upon the appellee to tell the plaintiffs that their line was open. Therefore the appellees would not be liable for damages that might have been averted had it notified plaintiffs of the broken line, and they had in turn fixed it. We also are unable to see how, even if there had been a duty to notify and a failure to perform it, under the facts of this case it could be said it was the proximate cause of the injury. Mere notice to appellants would not have prevented the fire. The want of water was caused by a broken water line. We fail to understand how the failure to notify of the broken water line was the proximate cause of the injury.

It follows from what has been said, and we hold, that the private line was owned by

the plaintiffs; that it was their duty to keep it in repair; that the damage to said pipe line was not caused by any negligence on the part of the appellee; that the failure to mend the said line caused the appellants' loss and that the contract entered into, as alleged, by and between appellants and appellee to furnish water through said private line, was rendered incapable of performance by the negligence of appellants in failing to fix and keep in repair the said private line. El Paso & S. W. Ry. Co. v. Eichel, 130 S. W. 922, 940; Gravity Canal Co. v. Sisk, 43 Tex. Civ. App. 194, 95 S. W. 724, 726; McConnell v. Corona Water Co., 149 Cal. 60, 85 Pac. 929, 8 L. R. A. (N. S.) 1171, 1174; 6 Ruling Case Law, 943, § 324; S. Tex. Tel. Co. v. Huntington, 121 S. W. 242, 247, 248; Davis v. Yates, 1 White & W. Civ. Cas. Ct. App. § 265; Wright v. Meyer, 25 S. W. 1123; Loudenback v. Tenn. Phos. Co., 121 Fed. 298, 58 C. C. A. 220, 61 L. R. A. 402, 406; Rice v. Fidelity & Deposit Co., 103 Fed. 427, 433, 43 C. C. A. 270; King Bridge Co. v. City of St. Louis (C. C.) 43 Fed. 768, 10 L. R. A. 826, 828; Notes, 30 L. R. A. 39; Hood v. Raines, 19 Tex. 400, 404; Fresno Mill Co. v. Fresno Canal Co., 126 Cal. 640, 59 Pac. 140; 3 Elliott, Contracts, §§ 2044, 2038; 6 Ruling Case Law, p. 1005, § 369, p. 1012, § 374.

Appellants were not relieved from this responsibility by the fact that in many cases the Waterworks Company notified its patrons of the defects in the line, and it follows that the lower court did not err in instructing the jury to find for appellee. Each and all of the assignments of appellants have been considered, and they are all overruled, the record has been carefully gone over, and we believe that the action of the lower court was justified, and, finding no error therein, the case is in all things affirmed.

It is so ordered.