

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

January 25, 1971

Honorable Enrique H. Pena
County Attorney
El Paso County
Room 201, City-County Bldg.
El Paso, Texas 79901

Opinion No. M-774

Re: Authority of County
Treasurer to sign
checks drawn on El
Paso County General
Assistance Agency
account.

Dear Mr. Pena:

In your recent letter you requested an opinion of this office, setting out the fact situation as follows:

"The County of El Paso, as part of its welfare program, has created a General Assistance Agency. Each year the Commissioners' Court budgets funds for operation of the Agency. Payments to welfare recipients are made by check. Our County Auditor draws a warrant which is approved by the County Treasurer to transfer funds from county general funds to El Paso County General Assistance Agency account. Commissioners' Court, the County Auditor's accounting system, directed the County Treasurer to countersign checks drawn on El Paso County General Assistance account. The County Treasurer refuses to countersign these checks. The population of El Paso County is in excess of 350,000."

We have also been advised in a telephone conversation that there is no dispute as to the legality of the disbursements with reference to the persons and the purposes for which disbursements are made. We do not here rule on that matter.

We understand that the question which has arisen among the officers of your county involves purely procedural matters. We understand that for a number of years, pursuant to an order of the commissioners court, warrants have been drawn on the county general fund to transfer funds budgeted

-3770-

for the county's welfare program to a bank account designated as the El Paso County General Assistance Agency account, and that those warrants are drawn by the County Auditor and approved by the County Treasurer.

We understand that disbursements are made to individual welfare recipients by checks drawn on the General Assistance Agency account, that these checks are signed by the County Auditor, but that the County Treasurer has raised a question as to his authority to countersign these checks.

We are advised that the order of the commissioners court directing the transfer of funds by warrant on the county general fund is silent concerning the matter of signatures authorized on checks drawn on the General Assistance Agency account.

Under the circumstances described, we are of the opinion that, if satisfied that the checks are issued for a lawful purpose, the County Auditor has the duty to sign the checks and the County Treasurer has the duty to countersign them.

Article 1709, Vernon's Civil Statutes, provides as follows:

> "The county treasurer shall receive all moneys belonging to the county for whatever source they may be derived, and pay and apply the same as required by law, in such manner as the commissioners court of his county may require and direct."

Article 1711, Vernon's Civil Statutes, provides as follows:

> "He (the County Treasurer) shall render a detailed report at every regular term of the commissioners court of his county of all the moneys received and disbursed by him, of all debts due to and from his county, and of all other proceedings in his office, and shall exhibit to said

> court at every such term all his books and
> accounts for their inspection and all vouchers
> relating to the same, to be audited and allowed."

Article 1713, Vernon's Civil Statutes, provides as follows:

> "The county treasurer shall not pay any
> money out of the county treasury except in
> pursuance of a certificate or warrant from
> some officers authorized by law to issue the
> same; and, if such treasurer shall have any
> doubt of the legality or propriety of any
> order, decree, certificate or warrant presented
> to him for payment, he shall not pay the same,
> but shall make report thereof to the commis-
> sioners court for their consideration and direction."

We are of the opinion that the commissioners court has the authority to transfer funds by warrant from the county's general fund to the general assistance agency account for dis- bursement to the proper welfare recipients of the county. We think the court has this authority under paragraphs 10, 11, and 15 of Article 2351, Vernon's Civil Statutes. True, we find in Bexar County v. Mann, 138 Tex. 93, 157 S.W.2d 134 (1941), the language

> "All county expenditures lawfully authorized
> to be made by a county must be paid out of the
> county's general fund unless there is some law
> which makes them a charge against a special fund.
> Williams v. Carroll, Tex.Civ.App. 183 S.W. 29."

We think, however, that money transferred from the general fund to the agency account to be used for valid county purposes is nevertheless expended from the general fund where the transfer is done for accounting convenience.

We are of the opinion that Articles 1709, 1711, and 1713 apply to the county treasurer with respect to money in the agency account just as they do with respect to money in the

general fund.  The treasurer shall receive and pay money in such manner as the commissioners court may require and direct, under Article 1709.  He shall make proper accounting of the money in the agency account under Article 1711, and may refer doubtful items to the court for their consideration and direction under Article 1713.

In Gussett v. Nueces County, 235 S.W. 857 (Tex.Com. App. 1921), the court approved the following charge by the trial judge:

> "It is the duty of a county treasurer to receive all moneys belonging to the county from whatever source they may be derived, and pay and apply the same as required by law, in such manner as the commissioners court of his county may require and direct, and all sums of money so paid out by a county treasurer under the requirements or direction of the commissioners court, or paid out by a county treasurer for the benefit of the county under the direction of any member of the commissioners court or county judge and afterwards approved and ratified by the commissioners court, must be taken as payment according to law."

Attorney General's Opinion No. WW-430 (1958) dealt with an accounting system similar to the one followed in your county and with the matter of the treasurer's signature on the warrant transferring funds from the general fund to the welfare fund.  The opinion concludes as follows:

> "Having concluded, therefore, that the general control and management of county finances rests in the Commissioners' Court, and having further concluded that the accounting procedure above described does not amount to a delegation of the functions of the County Treasurer under Articles 1710 and 1627, Vernon's Civil Statutes, it is our opinion and you are so advised that the above described system of disbursement of the funds of Dallas County is valid and in conformity with the statutes of the State of Texas.

"In view of our answer to your first question, we presume that the County Treasurer of Dallas County will carry out his functions as County Treasurer in processing and paying the warrant issued by the County Clerk to begin this disbursing procedure. Accordingly, we deem it unnecessary to answer your second question concerning whether mandamus would lie against the Treasurer to require his approval of the warrants issued by the County Clerk."

For your information we enclose a copy of Opinion No. WW-430.

## S U M M A R Y

If the commissioners court orders money transferred from the county's general fund to a special bank account for disbursement by check to welfare recipients, checks on that account must be signed by the county auditor, and the county treasurer has the duty to countersign the checks, but he may avail himself of the protection afforded by Article 1713, V.C.S., by referring the items in question to the Commissioners Court for their direction.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by James S. Swearingen
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

Malcolm Quick
Ralph Rash
Houghton Brownlee
James Broadhurst

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant