(969 P.2d 906)
No. 77,396

REYNOLDS-REXWINKLE OIL, INC., *Appellee/Cross-appellant,* v. PETEX, INC., *Appellant/Cross-appellee.*

Opinion filed December 11, 1998.

*Lee Thompson* and *Rachael K. Pirner,* of Triplett, Woolf & Garretson, LLP, of Wichita, for appellant/cross-appellee.

*David J. Morgan* and *Todd King,* of Hershberger, Patterson, Jones & Roth, L.C., of Wichita, for appellee/cross-appellant.

Before MARQUARDT, P.J., LEWIS, J., and C. FRED LORENTZ, District Judge, assigned.

MARQUARDT, J.: Petex, Inc., (Petex) appeals the district court's granting of summary judgment to Reynolds-Rexwinkle Oil, Inc., (Reynolds-Rexwinkle) holding that the oil and gas lease between Petex and Herman and Loretta Schippers entered on August 30, 1993, was an extension of the lease assignment between Petex and Reynolds-Rexwinkle entered on May 14, 1993. Reynolds-Rexwinkle cross-appeals the denial of its motion for attorneys fees.

The district court found that on February 5, 1992, the Schippers entered into an oil and gas lease (original lease) with Hess, Inc., (Hess). The original lease was for a period of 1 year and contained an option to extend as long as oil and gas remained in production on the leased property. Consideration for the lease was $1,000. The Schippers retained a ⅛ royalty interest under the original lease. A rider provided that the Schippers also retained an additional overriding royalty interest of ¹⁄₃₂ of the remaining ⅞ interest in production from the lease property.

On February 10, 1992, Hess assigned its interest in the original lease to Reynolds-Rexwinkle. Reynolds-Rexwinkle is a Kansas corporation, with its principal place of business in Sedgwick County, Kansas. Prior to the expiration of the original lease term, Reynolds-Rexwinkle exercised its option to extend the lease for 1 year to February 5, 1994. Reynolds-Rexwinkle paid the Schippers $1,000 in consideration for the extension.

On May 14, 1993, Reynolds-Rexwinkle assigned its interest in the original lease to Petex, a Missouri corporation with its principal place of business located in Springfield, Missouri. The assignment states:

"The Assignor herein hereby expressly excepts, reserves, and retains title to an undivided 1.5% of ⅞ths of all oil, gas, casinghead gas produced, saved, and marketed from the above described land under the provisions of the aforesaid lease, *or any extension or renewal thereof*, as an overriding royalty, free and clear of any cost and expense of the development and operation thereof, excepting taxes applicable to said interest and the production therefrom." (Emphasis added.)

Petex did not drill, rework, or explore the leased property under the original lease.

On August 30, 1993, Petex entered into a new lease with the Schippers (second lease) commencing on February 6, 1994, 1 day after the original lease expired.

The terms of both the original lease and the second lease are nearly identical. Both leases cover the same property and the same primary parties. The Schippers received a ⅛ royalty interest and ¹⁄₃₂ of ⅞ overriding royalty interest in all oil and gas produced under both leases. The primary term of the second lease was 2 years. The primary term of the original lease was 1 year with an

option to extend for 1 additional year. Consideration for the second lease was $10 with an additional delay rental of $800 to secure the second year of the primary term. Consideration for the original lease was $10 and an additional $1,000 to exercise the option to extend. The main difference is that the second lease contains no reference to Reynolds-Rexwinkle's overriding royalty interest.

On November 18, 1994, within the first year of the second lease, Petex drilled an oil well on the property. On December 28, 1994, Reynolds-Rexwinkle filed an affidavit in Sedgwick County, Kansas, claiming a 1.5 percent of $\frac{8}{8}$ overriding royalty interest under the terms of the May 14, 1993, assignment. On or about January 6, 1995, Petex began producing paying quantities of oil from the well.

On March 17, 1995, Reynolds-Rexwinkle sent a demand letter to Petex stating that its overriding royalty interest must be honored. The letter requested a response within 10 days or suit would be filed. Petex did not respond to the demand letter. On March 27, 1995, Petex filed a petition for a declaratory judgment and reformation in the Circuit Court of Greene County, Missouri, requesting a determination that Reynolds-Rexwinkle had no interest in the second lease. Petex claimed the Greene County Circuit Court had jurisdiction over Reynolds-Rexwinkle because the latter's vice-president made an unsolicited phone call to the Petex offices in Missouri on May 14, 1994, to discuss the original lease assignment. There is no evidence in the record that Petex proceeded with its Missouri lawsuit beyond filing the petition.

On May 16, 1995, Reynolds-Rexwinkle filed suit in the District Court of Sedgwick County, Kansas, seeking to enforce its overriding royalty interest in the original lease assignment. Both parties filed motions for summary judgment in the Kansas case. Reynolds-Rexwinkle claimed the second lease should be regarded as an extension of the original lease and it requested attorney fees. The district court granted partial summary judgment to Reynolds-Rexwinkle, holding that the second lease is an extension of the original lease and that "Reynolds is entitled to recover from Petex an amount equal to all proceeds attributable to the overriding royalty interest as provided for in the Assignment, together with interest as hereinafter provided until paid." The district court found that

no confidential relationship or fiduciary duty existed between the parties. The district court also granted partial summary judgment to Petex denying Reynolds-Rexwinkle's attorney fees.

Petex filed a timely notice of appeal. Reynolds-Rexwinkle filed a timely notice of cross-appeal.

Petex argues that the district court should have declined jurisdiction under the doctrine of comity because the Circuit Court of Greene County, Missouri, had already asserted jurisdiction over the same parties and the same dispute.

Whether a district court should have declined jurisdiction over a case under the doctrine of comity is reviewed under the abuse of discretion standard. *Anderson v. Anderson*, 214 Kan. 387, 392, 520 P.2d 1239 (1974); *Boyce v. Boyce*, 13 Kan. App. 2d 585, 590, 776 P.2d 1204, *rev. denied* 245 Kan. 782 (1989). Discretion is abused when no reasonable person would agree with the decision of the district court. *Simon v. Simon*, 260 Kan. 731, 735, 924 P.2d 1255 (1996).

In *Boyce*, 13 Kan. App. 2d at 589-90, this court declined jurisdiction, stating:

"It is well established that, when a court of competent jurisdiction acquires jurisdiction of the subject matter, its authority continues until the matter is finally disposed of and no court of coordinate jurisdiction should interfere with its action. *Schaefer v. Milner*, 156 Kan. 768, 775, 137 P.2d 156 (1943). Courts should exercise comity between themselves in order to avoid expense, harassment, and inconvenience to the litigants. *Perrenoud*, 206 Kan. at 573. Under principles of comity, courts of one state give effect to the laws and judicial decisions of another, not as a matter of obligation, but out of deference and respect. *Head*, 242 Kan. 442, Syl. ¶ 2."

In *Boyce*, the plaintiffs filed suit in Kansas for child support immediately after they lost an identical suit in Nebraska. 13 Kan. App. 2d at 586. After noting the rules of comity, the court ruled that the district court did not abuse its discretion in declining jurisdiction because disappointed plaintiffs should not be allowed to engage in forum shopping after they have lost an identical suit in another state. 13 Kan. App. 2d at 591.

In *Anderson*, 214 Kan. at 392, our Supreme Court found the Butler County District Court did not abuse its discretion when it

accepted jurisdiction over a case while related proceedings were pending before the Sedgwick County District Court. In *Anderson,* the father and mother of a minor child were divorced in Minnesota and child custody was given to the father. The mother was given the right to take the child on a 4-week summer vacation to Wichita, Kansas. While in Kansas, the mother exceeded the 4-week stay and filed suit in Sedgwick County seeking custody of the child. She was granted temporary custody pending further proceedings. The mother and child then moved to Butler County, Kansas. The father filed a K.S.A. 60-1501 action in Butler County seeking custody of the child. The Butler County District Court found that full faith and credit should be given to the Minnesota divorce and child custody decree and granted custody to the father. Our Supreme Court stated:

"Under the principle of comity the Butler district court might . . . have deferred taking action on plaintiff's application for the writ until after the District Court of Sedgwick County had conducted a final hearing, but it was not required to give priority and we discern no abuse of discretion when it proceeded to hear its own lawsuit expeditiously. While we look with no great favor on multiple litigation or legal maneuvering for position on the part of litigants [citation omitted] we are aware of no legal impediment to Judge Benson's entertaining the habeas corpus action. The Butler district court had jurisdiction over the parties, over the subject matter and over the child, whether or not a suit for change of custody was pending elsewhere. The two actions were separate and distinct lawsuits and the question of priority of time in filing was immaterial." 214 Kan. at 392.

While forum shopping is not favored by Kansas courts, district courts are afforded significant discretion in determining whether the facts constitute such a practice. The most important issue is whether the court had jurisdiction over the subject matter and the parties, not whether one party filed its suit before the other.

Here, there is no evidence in the record that Reynolds-Rexwinkle was attempting to escape an adverse judgment from another jurisdiction. There is also no evidence that the Missouri case, filed on March 27, 1995, had addressed any substantive issues relating to the original lease assignment when Reynolds-Rexwinkle filed suit in Kansas on May 16, 1996. These facts distinguish the present case from the fact situation in *Boyce,* 13 Kan. App. 2d at 585.

Furthermore, this case involves a Kansas corporation, a Missouri corporation doing business in Kansas, Kansas landowners, Kansas lease property, and a Kansas oil and gas distribution company. The parties do not dispute that the Sedgwick County District Court had both subject matter and personal jurisdiction in this case in light of these facts. The only Missouri connection to this case was the location of Petex's corporate headquarters and two phone calls made by a Reynolds-Rexwinkle vice-president on May 13, 1994, to discuss the original lease assignment.

In light of the principles of comity, the district court did not abuse its discretion by accepting jurisdiction over this case.

Petex argues summary judgment was improper in its finding that the second lease was an extension or renewal of the original lease.

The standard of review in a case involving the district court's grant of summary judgment is well established:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131, 955 P.2d 1189 (1998).

Petex characterizes the second lease as neutral and unrelated to the original lease assignment. Petex claims the original lease assignment expired on February 5, 1994, and Reynolds-Rexwinkle's overriding royalty interest expired by its own terms on the same date.

Reynolds-Rexwinkle claims the second lease is a top lease which unfairly "washes out" its overriding royalty interest. Specifically, Reynolds-Rexwinkle claims Petex owes it a duty of fair dealing with regard to the overriding royalty interest in the assignment. It claims the second lease breached this duty. As such, it argues that by operation of law the second lease should be deemed an extension or renewal of the assignment. Reynolds-Rexwinkle argues that the judgment below should be affirmed.

An "overriding royalty interest" is

"a royalty carved out of the working interest created by an oil and gas lease. Most frequently it is created subsequent to a lease by outright grant or by a reservation in the assignment of the operating rights. It is an interest in oil and gas produced

at the surface, free of the expense of production and its outstanding characteristic is that its duration is limited by the duration of the lease under which it is created." *Campbell v. Nako Corporation*, 195 Kan. 66, 70, 402 P.2d 771 (1965).

A "top lease" is "[a] lease granted by the landowner during the existence of a recorded mineral lease which is to become effective if and when the existing lease expires or is terminated." 8 Williams and Meyers, Oil and Gas Law, Manual of Terms 1115 (1997).

"In the oil and gas vernacular to toplease is to secure a lease on land covered by an existing lease to the end that the toplease will be effective after the expiration of the existing lease and the interest of one or more lessees thereby eliminated. *Topleasing has the same invidious characteristics as claim jumping.*" (Emphasis added.) *Frankfort Oil Company v. Snakard*, 279 F.2d 436, 445, n.23 (10th Cir. 1960), *cert. denied*, 364 U.S. 920 (1960).

A "washout" is the "[e]limination of an overriding royalty or other share of the working interest by the surrender of a lease by a sublessee or assignee and subsequent reacquisition of a lease on the same land free of such interest." 8 Williams and Meyers, Oil and Gas Law, Manual of Terms 1162 (1997).

Two Kansas cases dealing with the issue of whether the second lease is a renewal or extension of the original lease assignment are *Campbell*, 195 Kan. 66, and *Howell v. Cooperative Refinery Ass'n*, 176 Kan. 572, 271 P.2d 271 (1954). Both of these cases contain facts that are not present in the instant case.

In *Howell*, our Supreme Court examined a dispute arising from a contract between a geologist and an oil drilling firm. The geologist procured oil and gas leases in his own name and then leased them to the firm reserving an overriding royalty interest for himself in any extension or renewal of the lease. Almost 2 months after expiration of the leases, the firm negotiated a new lease without the geologist's overriding royalty interest. The geologist sued. Our Supreme Court held that the overriding royalty interest applied to the second lease even though the second lease was entered after the original lease expired because of the confidential relationship between the parties. 176 Kan. at 578. The court observed that the contract created "a form of joint interest and joint ownership" between the parties which imposed a duty to protect their respective interests under the contract. 176 Kan. at 577. This special duty

provided the court with the ability to enforce the renewal and extension provision even though the contract had technically expired.

*Campbell* involved an oil and gas lease between the Campbells and the Nako Corporation with the Klippels owning a 1/16 of 7/8 overriding royalty interest in the lease. Without the Klippels' knowledge, the Campbells colluded with a faction of Nako which had taken control of the company and obtained a lease forfeiture by default against the Klippels. Campbell and Nako then negotiated the lease without the Klippels' overriding royalty interest. The Klippels sued to enforce their overriding royalty interest. Our Supreme Court noted:

"Most of the decided cases touching holders of an overriding royalty have arisen in controversies between the lessee and the overriding royalty holder, and here there seems clearly emerging a duty of fair dealing required on the part of the lessee (See 2 Williams and Meyers, Oil and Gas Law, § 420.2) to which doctrine this court has definitely inclined (*Howell v. Cooperative Refinery Ass'n.*, 176 Kan. 572, 271 P.2d 271).

. . . .

"Thus it would seem that the particular circumstances under which a lease is terminated and the presence or absence of bad faith does play a part in determining the duration of the overriding royalty. This would appear right and just as otherwise the holder is completely at the mercy of any collusive overreaching on the part of the owners of the other interests and, though having bargained in good faith for an interest in oil produced during the term of the lease, the law would be powerless to protect him from an unjust cancellation of that lease. The granting and reserving of overriding royalties is well known in the oil industry and the practice can and does serve both the landowners and the operating lessees' interests in the procuring and developing of leases. There is no reason why such holders should not have the ordinary protection of the law from collusion and fraud." 195 Kan. at 73.

## The court held:

"We hold that on bona fide forfeiture or surrender of a lease, the overriding royalty created thereunder falls with the lease. But if such forfeiture or surrender is obtained by fraud or collusion between the landowner and the lessee for the purpose of avoiding or cutting out the overriding royalty interest holder and the substitution of a new lease directly to the lessee, then a court of equity may grant relief to the overriding royalty holder against such forfeiture or surrender." 195 Kan. at 75.

Under *Campbell* and *Howell,* a lessor owes a duty of fair dealing to a holder of an overriding royalty interest. A breach of this duty is shown if the lessor engaged in fraud, collusion, or bad faith with regard to the overriding royalty interest.

While the fact situation in *Campbell* does not involve an original lease assignment containing a renewal or extension clause, its holding appears equally applicable to such cases. Requiring holders of overriding royalty interests to show fraud, collusion, or bad faith in order to prove a breach of fair dealing grants both the lessor and the holder of the overriding royalty interest legal protection. See, *e.g., Drilling, Inc., v. Warren*, 185 Kan. 29, 35, 340 P.2d 919 (1959) (holding overriding royalty interest and extension clause terminated when the underlying lease terminated because oil exploration failed).

On appeal, Petex claims that *Howell*, 176 Kan. 572, requires that a confidential or fiduciary relationship exist before the duty of fair dealing is triggered. Such a rule would contradict the general principle stated in *Campbell*, 195 Kan. at 73. Petex is correct, however, when it points out that a breach of the duty of fair dealing requires a showing of fraud, collusion, or bad faith. *Campbell*, 195 Kan. at 75. Such a showing is a question of fact. See, *e.g., In re Estate of Hessenflow*, 21 Kan. App. 2d 761, 774, 909 P.2d 662 (1995), *rev. denied* 259 Kan. 928 (1996) (fraud is a question of fact); *Warren*, 185 Kan. at 32 (trial court instructed that bad faith is a question of fact).

Reynolds-Rexwinkle raised a material issue of a duty of fair dealing and bad faith which was not resolved in the district court's decision. Such a dispute is material because the presence of one of these three factors would show that Petex breached its duty of fair dealing, which is required to conclude that the top lease is an extension of the original lease. The district court found that there was no confidential relationship between the parties in the instant case; therefore, the issues involved where there is a confidential relationship are not before this court. We hold that absent a contract provision that an overriding royalty interest in an oil and gas lease survives a subsequent top lease, a top lease extinguishes the overriding royalty interest, unless the holder of the overriding roy-

alty interest proves a breach of duty of fair dealing by showing that the lessor committed fraud, collusion, or bad faith in granting the top lease. The district court erred in granting summary judgment when it failed to require Reynolds-Rexwinkle to prove that Petex's actions were fraudulent, collusive, or in bad faith.

The district court assessed the costs of the action against Petex pursuant to K.S.A. 60-2002. It denied Reynolds-Rexwinkle's motion for attorney fees under K.S.A. 55-1617 because the case presented "a valid legal argument" as to the parties' respective rights and responsibilities. The court awarded prejudgment interest to Reynolds-Rexwinkle under K.S.A. 16-201.

Reynolds-Rexwinkle claims that under K.S.A. 55-1614 *et seq.*, the Kansas Interest on Proceeds from Production Act, it is a "payor" to whom Petex as "payee" owes a sum equal to the amount of its overriding royalty interest in the total oil production generated under the top lease. Furthermore, because Reynolds-Rexwinkle is entitled to compensation from Petex, it argues it is also entitled to attorney fees under K.S.A. 55-1617, which states: "The prevailing party in a proceeding brought pursuant to this act on which a judgment is rendered may recover court costs and reasonable attorney fees at the discretion of the court."

Because the district court erred in granting summary judgment in this case, any resolution of the matter of court costs and attorney fees is premature. The district court's error requires that its order assessing court costs and attorney fees be vacated and the matter reheard at the close of further proceedings if the parties raise the issue again.

Accordingly, we reverse the grant of summary judgment and remand the case to the district court for further proceedings consistent with the analysis set forth above.