(291 P.3d 484)

No. 106,786

HR Technology, Inc., *Appellant*, v. Imura International U.S.A., Inc., and Vita Craft Corporation, *Appellees*.

Opinion filed October 5, 2012.

*James M. Armstrong* and *Todd N. Tedesco*, of Foulston Siefkin LLP, of Wichita, for appellant.

*Brian W. Fields, J. Bradley Leitch*, and *Jason C. Parks*, of Lathrop & Gage LLP, of Kansas City, Missouri, *Carrie E. Josserand*, of Lathrop & Gage LLP, of Overland Park, and *John Terry Moore*, of Moore Martin, L.C., of Wichita, for appellees.

Before Hill, P.J., Malone and Standridge, JJ.

Hill, J.: In this case, the district court dismissed a lawsuit based upon the grounds (among others) of concurrent jurisdiction with the federal court. At first, three corporations started to litigate their contractual disputes in state court in Johnson County. Then, by agreement, the companies moved their disputes to federal court in Kansas. After protracted battles in federal court, one of the parties, HR Technology, Inc. (HRT) filed this petition in Sedgwick County District Court, making guaranty claims against one of the other corporations. These guaranty claims arose from the counterclaim made by one of the parties in the federal litigation question-

ing the validity of HRT's patents. HRT's claims could have been raised in the federal litigation. In our view, the state district court could decline to hear the lawsuit as a matter of comity between the state and federal courts. Our Supreme Court has recognized that the rule of comity between courts of concurrent jurisdiction rests upon the principles of wisdom and justice, to prevent vexation, oppression, and harassment, and eliminate unnecessary litigation and the multiplicity of suits. Because we find no abuse of discretion here, we hold the district court did not err when it granted summary judgment, and we affirm the dismissal of the lawsuit.

*Two corporations enter into license agreements and then a third joins in.*

HRT is a Kansas corporation. It is the leading inventor and developer of heat retention technology and radio frequency identification (RFID) technology that is used in cookware. In 2003, HRT made an agreement with another Kansas corporation, Imura International U.S.A., Inc. (Imura), granting Imura the right to use the RFID technology and some related patents held by HRT. The parties refer to this agreement as "the Asia License."

Under this Asia License, Imura received the exclusive right to market and sell residential cooking systems using HRT's licensed technology in Japan, Taiwan, and mainland China. But Imura did not have the right to manufacture the cookware. Instead, Imura agreed to purchase the cookware from an "Authorized Manufacturer" as defined in the agreement.

Then, late in 2004, HRT and Imura entered a second agreement in which Imura was granted the right to sell the cooking systems worldwide, except for the countries of Japan, Taiwan, and mainland China. This agreement is known as "the Worldwide License." In the Worldwide License, Imura was granted the right to manufacture cookware utilizing HRT's licensed technology.

In addition to those two corporations, another party to these proceedings is Vita Craft Corporation (Vita Craft), a Kansas corporation, a wholly owned subsidiary of Imura. In 2003 and then in 2004, Imura assigned all its rights and interests in the License

Agreements to Vita Craft through two assignment and assumption agreements.

Disputes arose.

*The parties' license disputes move from one court to another.*

In early 2006, HRT terminated Imura's rights under the License Agreements, claiming Imura had breached certain provisions of the agreements. Imura and Vita Craft then filed suit against HRT in the Johnson County District Court, asking the court to:

- issue orders prohibiting HRT from notifying other companies that the License Agreements had been terminated;
- render a declaratory judgment that the two companies did not breach the License Agreements;
- award them damages based on HRT's tortious interference with contracts they had with third parties; and
- find HRT breached the License Agreements by terminating them.

In response, HRT filed a counterclaim against Imura and Vita Craft alleging fraud, breach of contract, and tortious interference with a contract. In an amended pleading, HRT added a claim for post-termination breach of contract (asserting Imura and Vita Craft continued to use its patents and technology without permission after the License Agreements were terminated) and made a patent infringement claim. HRT asked the court to declare the patent Imura was attempting to have authorized (referred to as "Patent 675") invalid.

A little more than a year later, HRT filed suit against Imura and Vita Craft in the United States District Court for the District of Kansas. In that case, HRT again asked the court to declare Patent 675 invalid and claimed Imura had infringed upon its patents. The parties later agreed to consolidate the Johnson County case with the federal case, so the Johnson County case was dismissed without prejudice. HRT dismissed its initial federal court case and filed a new federal case in May 2008 asking the court to declare Patent 675 invalid and claiming, among other things, that Imura and Vita Craft breached the License Agreements, breached the License Agreements post-termination, and infringed upon HRT's patents.

Then, Imura and Vita Craft filed a counterclaim alleging HRT breached the License Agreements by terminating them and also claimed HRT tortiously interfered with its contracts with third parties and business advantages. Imura and Vita Craft also claimed they did not infringe upon HRT's patents and asked the court to find HRT's patents unenforceable.

In August 2010, the federal court granted Imura's and Vita Craft's motion for summary judgment on HRT's state tort claims, statutory claims, and contract claims after determining HRT failed to provide a sufficient evidentiary basis to support these claims. The federal court did not address Imura's and Vita Craft's counterclaims at that time.

*Soon after the federal court ruled, HRT filed this lawsuit.*

Shortly after the ruling dismissing its claims, HRT filed suit in the Sedgwick County District Court, claiming Imura breached its guaranty obligation under the License Agreements and both Imura and Vita Craft breached its indemnification obligation under the agreements. HRT's claims were based on the following provisions of the License Agreements:

- Paragraph 3(c)(2) and (3) of the License Agreements provide that Imura must represent and warrant to HRT that any Authorized Manufacturer will be bound by the manufacturing agreements and terms set forth in the agreement and that every manufacturer agreement entered into by Imura will not cause HRT to lose, in whole or part, any rights it has in its RFID technology or patents.
- Schedule C requires the Authorized Manufacturer to expressly agree that:
  1. the RFID technology and patents belong to HRT and the Authorized Manufacturer will not make any claim in the future as to any ownership or right to use the RFID technology or patents, nor make any claim inconsistent with HRT's ownership of the RFID technology and patents;
  2. it does not have and will not pursue any claim for damages against HRT related to the cookware, the manufacturing agreement, the RFID technology, or the patents; and

   3. its rights to the RFID technology and patents are subject to and subordinate to the rights granted to Imura, and the Authorized Manufacturer's rights will cease upon termination of Imura's rights.
- Paragraph 3(d) of the License Agreements states that Imura will indemnify and hold HRT harmless from all damages, costs, and expenses resulting from any claims or suits of any type made or asserted by any such manufacturer against HRT.
- Paragraph 3(e) provides that Imura will guarantee to HRT that any Authorized Manufacturer will not breach the terms of the manufacturing agreement or assert any rights inconsistent with HRT's ownership of its technology and patents.

In its petition in the Sedgwick County case, HRT claimed that after it terminated the License Agreements, Vita Craft asserted the right to use the RFID technology and patents without a license, made claims inconsistent with HRT's ownership of the technology and patents—including claims that HRT's patents were invalid and unenforceable, and made claims for damages seeking recovery of expenses it incurred as a purported Authorized Manufacturer. Thus, HRT claimed that (1) Imura breached its guaranty obligation under paragraphs 3(c) and (e); (2) Imura breached its indemnification and hold harmless obligation (as a result of Vita Craft's suit); and (3) Vita Craft, as assignee of the License Agreements, breached its indemnification and hold harmless obligation.

In due course, Imura and Vita Craft moved for summary judgment in the Sedgwick County case, claiming (1) HRT's claims were compulsory counterclaims that should have been made in either the Johnson County case or in the federal case; (2) the claims are barred by the doctrine of res judicata and the rule against claim splitting; (3) the alleged breaches occurred after HRT terminated the License Agreements; and (4) the claims could only be made if an Authorized Manufacturer brought suit against HRT—and Vita Craft was not an Authorized Manufacturer.

After holding a hearing on Imura's and Vita Craft's motion, the district court granted summary judgment to Imura and Vita Craft, ruling HRT's claims were barred by the compulsory counterclaim rule, the doctrine of res judicata, the rule against claim splitting,

and the doctrine of concurrent jurisdiction. The court said HRT's claims were an attempt to "recast litigation" and get a "second bite of the apple" on claims that should have been presented in the federal case, noting the present claims involved the same parties, the same relationships, and the same contracts. The court concluded that HRT's current claims did not pass the "smell test."

HRT appeals the district court's grant of summary judgment. This court reviews an order granting summary judgment de novo. *In re Tax Appeal of LaFarge Midwest*, 293 Kan. 1039, 1043, 271 P.3d 732 (2012).

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to dispute must be material to the conclusive issues in the case. On appeal the court applies the same rules, and where the court finds that reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Osterhaus v. Toth*, 291 Kan. 759, Syl. ¶ 1, 249 P.3d 888 (2011).

*We examine the issue of concurrent jurisdiction.*

The district court concluded HRT's claims were barred, in part, by the doctrine of concurrent jurisdiction. The court cited *Nixon v. Nixon*, 226 Kan. 218, 596 P.2d 1238 (1979), for the rule that a court of coordinate jurisdiction should not interfere with pending proceedings under way in a sister court. The court reasoned that Imura's and Vita Craft's claims against HRT in the prior litigation (*i.e.*, in the Johnson County case and the federal case) triggered HRT's guaranty and indemnification claims, so those claims should have been presented "to the court that ha[d] the jurisdiction" to resolve all the claims at once. The court opined that the current claims were so similar and interconnected to the prior claims that it would be unjust to require Imura and Vita Craft to "subject themselves to [the] jurisdiction [of]" the Sedgwick County District Court.

In its initial brief, HRT did not challenge the district court's application of the doctrine of concurrent jurisdiction. HRT only addressed the issue in its reply brief, after Imura and Vita Craft suggested that we simply affirm the district court's decision on this basis. In its reply, HRT explains its failure to brief the issue by noting that Imura and Vita Craft did not rely upon the doctrine of concurrent jurisdiction in their motion for summary judgment and by arguing the district court did not explain how the doctrine applies or serves as an independent basis for granting summary judgment.

We are not so persuaded. The district court specifically cited the doctrine of concurrent jurisdiction in its decision, discussed jurisdiction in its analysis, and cited *Nixon* for support. Moreover, when the district court reaches the correct result, its decision will be upheld on appeal even if it relied on the wrong ground or assigned erroneous reasons for its decision. *Rose v. Via Christi Health System, Inc.*, 279 Kan. 523, 525, 113 P.3d 241 (2005).

A review of caselaw is helpful at this point. It has long been the rule in Kansas that the court of competent jurisdiction which first acquires jurisdiction retains it to the exclusion of any other court of concurrent jurisdiction. A court of coordinate jurisdiction should not interfere with pending proceedings underway in a sister court. *Nixon*, 226 Kan. at 221-22. The rule is applicable not only between courts within the same state, but also between federal courts and state courts and state courts of different states. *Marriage of Laine*, 34 Kan. App. 2d 519, 525, 120 P.3d 802 (2005), *rev. denied* 280 Kan. 1378 (2006).

Kansas law reflects that a court's application of the doctrine is entirely discretionary. In *Laine*, this court held the district court did not abuse its discretion in setting aside a divorce where a Texas court was already handling the divorce. 34 Kan. App. 2d at 520, 525. In doing so, the court confirmed the general rule that courts should exercise comity in order to avoid additional costs and inconvenience to litigants. See *Reynolds-Rexwinkle Oil, Inc. v. Petex, Inc.*, 25 Kan. App. 2d 707, 969 P.2d 906, *rev'd on other grounds* 268 Kan. 840 (1998); *Nixon*, 226 Kan. at 221-22.

While it is true that many of the cases where the doctrine of concurrent jurisdiction has been applied involve family law matters, such as divorce, child custody, and support issues, nonetheless, the doctrine has been applied in other contexts as well.

In *Reynolds*, Petex, Inc. asked a Missouri court to enter declaratory judgment and reform an oil and gas contract. The opposing party in the case later filed suit in Sedgwick County District Court seeking enforcement of its interest under the contract. In holding the Sedgwick County District Court did not abuse its discretion in exercising jurisdiction over the case, this court noted there was no evidence the opposing party was attempting to escape an adverse judgment from another jurisdiction; no evidence the Missouri court had addressed any substantive issues related to the contract; the case involved a Kansas corporation, a Missouri corporation doing business in Kansas, Kansas landowners, Kansas lease property, and a Kansas oil and gas distribution company; and the parties did not dispute that the Sedgwick County court had subject matter and personal jurisdiction over the parties. 25 Kan. App. 2d at 711-12.

The court said:

"While forum shopping is not favored by Kansas courts, district courts are afforded significant discretion in determining whether the facts constitute such a practice. The most important issue is whether the court had jurisdiction over the subject matter and the parties, not whether one party filed its suit before the other." 25 Kan. App. 2d at 711.

*We apply the doctrine to the facts of this case.*

Turning to the facts of this case, we first note that there has been no suggestion that the federal court lacked proper jurisdiction over the dispute between HRT and Imura and Vita Craft. The federal case was filed before the Sedgwick County case and was still being litigated at the time the Sedgwick County case was filed. Although the specific legal claims raised in the federal case differed from those presented to the Sedgwick County court, the claims revolved around the same license agreements, involved the same parties, and involved the same facts.

Indeed, these guaranty and indemnification claims arose from Vita Craft's attack on HRT's patents. All of the discovery accu-

mulated during the protracted federal litigation would be available to all of the parties to assist in the resolution of these new claims by HRT if it was litigated in federal court. Expensive new discovery would be necessary in a new state court action. After all, our Supreme Court has held:

"[T]he recognition of the rule of comity between courts of concurrent jurisdiction is most beneficial. The rule rests upon the principle of wisdom and justice, to prevent vexation, oppression and harassment, and eliminate unnecessary litigation and multiplicity of suits. A state court should exercise its discretion with care in refusing to stay the prosecution of an action where a prior action has been filed in the federal district court between the same parties, involving the same issues, and capable of authorizing the same relief." *Farmers Union Cooperative Elevator v. Grain Dealers Mut. Ins. Co.,* 194 Kan. 181, 184, 398 P.2d 571 (1965).

On appeal, HRT correctly points out that courts typically apply the doctrine of concurrent jurisdiction when refusing to exercise jurisdiction over a plaintiff's claims. The district court held HRT's claims were barred by the doctrine and did not simply refuse to exercise jurisdiction over the claims. But no matter how it was worded the result is the same: the court refused to consider HRT's claims on the merits. The fact that the district court held HRT's claims were barred as opposed to abstaining from exercising jurisdiction over the case does not prevent us from affirming the grant of summary judgment on this basis. Simply put, HRT has not shown us that the court abused its discretion.

In like manner, while it is true that prior cases dealing with the subject have all involved identical claims made in both courts, we are not persuaded that bars the application of the concurrent jurisdiction doctrine here, where HRT is raising derivative claims in the state lawsuit. After all, the indemnification and guaranty claims of HRT were triggered by actual claims made in the federal lawsuit. The goal of exercising comity between courts is to avoid expense, harassment, and inconvenience. *Perrenoud v. Perrenoud,* 206 Kan. 559, 573, 480 P.2d 749 (1971). We see no better place for these parties to seek justice than in federal court.

Affirmed.