Nos. 41,265 and 41,333, Consolidated

K & E Drilling, Inc., a Corporation, *Appellant,* v. Wyman M. Warren and Morris G. Veverka, *Appellees.*

(340 P. 2d 919)

Opinion filed June 13, 1959.

*John F. Eberhardt,* of Wichita, argued the cause, and *George B. Powers, Carl T. Smith, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris* and *Gerald Sawatzky,* all of Wichita, and *Alex M. Fromme,* of Hoxie, were with him on the briefs for the appellant.

*Marvin E. Thompson,* of Russell, argued the cause, and *George W. Holland* and *Clifford R. Holland, Jr.,* both of Russell, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Wertz, J.: This action was brought by plaintiff (appellant), K & E Drilling, Inc., a corporation, as the owner of an interest in an oil and gas lease, seeking to quiet title thereto against defendants (appellees), Wyman M. Warren and Morris G. Veverka, who are the record owners of an overriding royalty interest assigned to them by plaintiff under a prior lease, which terminated without production and was released of record before plaintiff, in good faith, acquired its interest in its new lease in controversy.

The sole question in issue is one of law involving the construction of defendants' overriding royalty, i. e., whether the instrument applies only to the old lease under which it was originally granted (or any extensions or renewals thereof), or whether, by its terms, it applies to completely new leases subsequently acquired, in utmost good faith, by plaintiff. The trial court entered judgment for defendants, and plaintiff appeals.

The pertinent facts are as follows: In the fall of 1954, defendants acquired two oil and gas leases on land in Graham county, which will be referred to here as the Ford No. 1 lease and the Eichman No. 1 lease. The first Ford lease, executed September 18, 1954, covered the northeast quarter and the east half of the southeast quarter of section 29, township 9 south, range 21. It was for a primary term of one year but provided for termination if no well was commenced within 120 days. The first Eichman lease, executed October 25, 1954, covered the west half of the southeast quarter of section 29 and the north half of the northeast quarter of section 32. This lease was also for a primary term of one year, but provided for termination if no well was commenced by March 21, 1955.

On November 24, 1954, defendants assigned both leases to plaintiff, in consideration of plaintiff drilling a test well on the Ford No. 1 lease. On December 12, 1954, plaintiff executed and delivered to defendants a sliding scale overriding royalty assignment on each lease. These assignments were for one-eighth of seven-eighths of the production, except when the per-well average production was fifteen barrels a day or less, in which case the override was one-sixteenth of seven-eighths of the production. The pertinent portions of these assignments provide as follows:

"The above overriding royalty shall be paid out of all such production if, as and when produced, saved and sold from the above described land *under the terms and provisions of the present oil and gas lease thereon, or any extensions or renewals thereof.* It is understood that said overriding royalty shall bear its proportionate part of any and all taxes assessed against the production. ·

"The overriding royalty herein transferred and conveyed shall be deemed to be a *covenant running with the land and shall be binding upon the successors and assigns of the parties hereto.*" [Emphasis supplied.]

Plaintiff commenced a test well on the Ford No. 1 acreage December 28, 1954, and completed the same as a dry hole January 7, 1955, at which time the well was plugged and abandoned. No further drilling was undertaken under either lease. The Ford No. 1 lease expired September 18, 1955, at the end of its primary term,

and was released by plaintiff October 6, 1955. The Eichman No. 1 lease terminated March 21, 1955, for failure to commence a test well, but was not formally released by plaintiff until October 25, 1955, at the end of its primary term.

On November 17, 1955, one R. A. Cook [a stranger], acquired a new oil and gas lease (referred to as the second Eichman lease) covering the north half of the northeast quarter of section 32. It will be noted that the only acreage in common under the two Eichman leases, as well as the only land involved herein, is the north half of the northeast quarter of section 32. On January 11, 1956, by assignment from Cook, plaintiff acquired an undivided one-third interest in Cook's seven-eighths' working interest in the second Eichman lease.

On March 30, 1956, a commercial well was completed on the second Eichman lease, and Mobil Crude Purchasing Company, Inc., began purchasing the oil production therefrom. On April 13, 1956, defendants recorded their original December 12, 1954, over-riding royalty assigned under the first Eichman lease. As a result, Mobil refused to pay plaintiff its portion of the purchase price for oil from the new Eichman lease. Upon demand by the plaintiff, defendants refused to release their overriding royalty; whereupon, plaintiff brought this suit to quiet its title to its one-third interest in the second Eichman lease and to have defendants' overriding royalty canceled of record.

Defendants, by way of answer, admitted that the overriding royalty assignments contained the language heretofore related, but alleged that they also contained other pertinent language and the whole of the instruments should be considered by the court. Further, defendants denied their overriding royalty had expired with the termination of the first Eichman and Ford leases, and affirmatively alleged that some time after the drilling of the dry hole on the first Ford lease plaintiff conceived a scheme or plan to permit the first Ford and Eichman leases to expire in order to terminate defendants' overriding royalties and subsequently con-spired with others to obtain an interest in other leases on the same properties free from defendants' overriding royalties. Defendants alleged that the interests plaintiff now holds in the second Eich-man lease were acquired by wrongful conduct and bad faith on the part of plaintiff. Defendants further alleged that the geologi-cal information known to both plaintiff and defendants about the

first Ford and Eichman leases was of such a nature that the ordinary, prudent operator would have done such additional drilling on said leases as would have resulted in the discovery of oil thereon during the primary term of the leases, and that plaintiff's failure to do so constituted negligence and a violation of the fiduciary relationship of the parties. Finally, defendants alleged that by reason of plaintiff's wrongful conduct, bad faith and negligence the court should construe plaintiff's existing interest in the second Eichman lease as an extension or renewal of the original Eichman lease, insofar as it covers the north half of the northeast quarter of section 32, thus subjecting it to defendants' assignment of an overriding royalty. In the alternative, defendants prayed the court, in equity and good conscience, to impress plaintiff's interest in the second Eichman lease with defendants' overriding royalty interest, prorated on the basis such interest bears to the whole of the lease.

By way of reply, plaintiff denied the existence of any scheme or conspiracy to permit the original leases to expire for the purpose of terminating defendants' overriding royalty, and denied it was guilty of bad faith, negligence or breach of any fiduciary relationship.

With the issues so joined, the case proceeded to trial. The trial court held that the burden of proof on the question of plaintiff's bad faith in acquiring the second Eichman lease was on the defendants, and that, as a matter of fact, the defendants failed to establish bad faith, but that the plaintiff established the second lease was acquired in good faith. In its conclusions of law, the court held that since there was no bad faith on the part of the plaintiff, *Howell v. Cooperative Refinery Ass'n,* 176 Kan. 572, 271 P. 2d 271, did not apply and the only question to be determined was what the parties intended by the original instrument assigning overriding royalties to the defendants. The court held that by the terms of that instrument defendants were entitled to an overriding royalty under *any* lease acquired by the plaintiff on the land described therein, and, therefore, the plaintiff's existing leasehold interests in the land covered by the original Eichman and Ford leases were subject to defendants' overriding royalty.

Judgment was entered for the defendants March 26, 1958. Plaintiff's post-trial motions were overruled April 25, 1958, and plaintiff appeals. That appeal is docketed here as No. 41,265. On May

13, 1958, plaintiff filed a supplemental motion for judgment on the ground that the overriding royalty agreement, as construed by the court, violated the rule against perpetuities and was therefore void. This motion was overruled and plaintiff's appeal was docketed here as No. 41,333. In oral argument to this court, plaintiff admitted its supplemental motion for judgment was filed with the district court after expiration of the term and its second appeal, No. 41,333, must therefore be dismissed.

No cross-appeal was taken from the trial court's finding that the plaintiff acted in good faith in acquiring its interest in the second Eichman lease, and defendants admit the second Eichman lease is not an extension or renewal of the first lease, as those terms are used in the overriding royalty assignment. The parties agree that the only question here involves the trial court's construction of the overriding royalty assignment. Defendants, in effect, contend that the overriding royalty interest created by the instrument in question could not be a "covenant running with the land," as that term is commonly understood, since an override is not an interest in land. They maintain, therefore, that in order to give effect to that phrase in the instrument it must be construed to mean that the overriding royalty applies to subsequent leases in which plaintiff acquires an interest. Thus construed, the assignment applies specifically to *three* production situations: Production under the first Eichman and Ford leases, production under extensions and renewals of those leases, and production under subsequent leases acquired by plaintiff on any portion of the original leasehold acreage. Plaintiff maintains that although oil and gas leases in Kansas are not interests in real property, covenants in such leases or in assignments of interests in such leases can, and do, run with the land. In the alternative, plaintiff argues that even if covenants in an overriding royalty do not run with the land or with the lease, an "any new lease" clause is so extraordinary and unique that if the parties intended to so contract they would have spelled out their intentions with detailed clarity. Plaintiff maintains further that the phrase "covenant running with the land" has an established technical meaning; that the words of the instrument are clear and unambiguous and there is no room for "interpretation" of the phrase, which, in effect, amounts to a rewriting of the instrument.

We deem it unnecessary to discuss at length the rules concerning covenants running with the land or to determine whether the over-

ride here in issue could run with the land or with the lease. We have before us the same question as did the trial court and the one upon which it based its decision, *i. e.,* the one concerning the contractual obligations turning upon the intention of the parties, as indicated by the language. employed in the instrument creating the overriding royalty. We must therefore look to the instrument·itself. (*Hale v. Oil Co.,* 113 Kan. 176, 213 Pac. 824.) The judgment must be affirmed *only* if the contract assigning the overriding royalty shows on its face the intent and purpose to apply the override to subsequent leases acquired by plaintiff, in good faith, on any portion of the original leasehold acreage.

Following the formal "whereas" clause of the instrument are the two paragraphs here in dispute. The first of these is the granting clause, which conveys to the defendants the overriding royalty in the specified size and amount. This paragraph provides that the overriding royalty is to be paid out of all production from the described land under the provisions of the "present oil and gas lease thereon" (the original Ford and Eichman leases), or "any extensions or renewals thereof." In the second paragraph, immediately following, is the language which provides that the overriding royalty shall be deemed to be a covenant running with the land and binding upon successors and assigns of the parties.

This court has often held that the intent and purpose of a written instrument are to be determined by consideration of all the pertinent provisions and not by critical analysis of a single isolated provision. (*Maltby v. Sumner,* 169 Kan. 417, 219 P. 2d 395; *Geier v. Eagle-Cherokee Coal Mining Co.,* 181 Kan. 567, 313 P. 2d 731, and cases cited therein.)

It is clear to us that the quoted first paragraph of the instrument in question was intended by the parties to define the terms of the covenant entered into by them and to specify the land to be burdened with the covenant; while the second paragraph was intended to define the parties to be bound by the covenant. It is equally clear that if the parties had intended to make the covenant apply not only to production under the existing leases and extensions or renewals thereof but to unrelated leases subsequently acquired on the same property, they would have clearly indicated this intention by appropriate language in the granting clause, which specified the land to be burdened with the covenant, rather than by attempting to reach this result in the paragraph dealing with who was to be bound by the covenant.

Even assuming that the provisions of the second paragraph alone may be considered in determining the intent of the parties, it is not within the province of the court to reform the instrument by rejecting words of clear and definite meaning and substituting others therefor. (*Geier v. Eagle-Cherokee Coal Mining Co.*, supra.) Moreover, where technical words or legal terms are used in a contract, they will be construed in their technical sense in the absence of anything to show that they were used in a different sense. (*Seymour v. Armstrong*, 62 Kan. 720, 64 Pac. 612; *Francis v. Shawnee Mission Rural High School*, 161 Kan. 634, 170 P. 2d 807; 17 C. J. S. Contracts § 302, p. 720; 3 Williston, Contracts, § 614, p. 1765.) The words "covenant running with the land" have a well-recognized and clear legal meaning. Regardless of the legal effectiveness of the phrase, *i. e.*, whether or not the assignment of overriding royalties here involved is, in fact, a covenant running with the land or lease, there is no indication in the contract that the parties intended those words to mean anything different from their commonly accepted legal meaning. We cannot therefore construe "covenant running with the land" to mean that the overriding royalty applied to production under any unrelated new lease subsequently acquired, in good faith, on the same property.

We think the fair meaning of the terms of the royalty assignment is that defendants were to receive one-eighth of seven-eighths of the production only under the original Ford and Eichman leases or any extensions or renewals thereof, and that if no oil or gas was discovered during the primary term of the lease or any extensions or renewals thereof, and the lease terminated, then defendants' rights terminated with the lease.

It follows that the judgment of the trial court in case No. 41,265 is reversed with directions to enter judgment for the plaintiff, quieting title to its one-third interest in the lease covering the north half of the northeast quarter of section 32 and canceling of record defendants' overriding royalty, insofar as it affects the property in question. The appeal in case No. 41,333 is dismissed.

It is so ordered.