907 F.2d 1031
 Fred S. LILLIBRIDGE; Robert E. Johnson; Robert J. Gutru;
Mrs. Robert N. Nunemacher, Executrix of the Estate
of Robert N. Nunemacher, Plaintiffs-Appellants,
v.
MESA PETROLEUM COMPANY; MTS Limited Partnership; Texaco,
Inc.; Sequoia Associates, Ltd.; A.R. Dillard,
Jr.; Cobra Oil & Gas Corporation,
Defendants-Appellees.
 No. 87-1578.
 United States Court of Appeals,
Tenth Circuit.
 July 11, 1990.
 
 Jeff C. Spahn, Jr. (Lee Thompson, with him on the briefs) of Martin, Pringle, Oliver, Wallace & Swartz, Wichita, Kan., for plaintiffs-appellants.
 Jim H. Goering of Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan. (Douglas L. Stanley and Charles J. Woodin of Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., W. Lin Patterson and Robert C. Thomas of Mesa Petroleum Co., Amarillo, Tex., with him on the briefs) for defendants-appellees.
 Before LOGAN, SEYMOUR, and BRORBY, Circuit Judges.
 BRORBY, Circuit Judge.
 
 
 1
 This is an appeal from a summary judgment wherein the trial court held that oil and gas leases were new oil and gas leases rather than an extension or renewal of an existing lease, thus depriving appellants of an overriding royalty interest that had been carved out of the original lease.
 
 
 2
 In May 1972 the mineral owners executed and delivered to Robert Gutru an oil and gas lease. This lease covered 800 acres, had a primary term of ten years and provided a landowner's royalty of twelve and one-half percent (one-eighth). Mr. Gutru, through a series of assignments, assigned the working interest in this lease. These assignments were made upon a printed form by which Mr. Gutru reserved an overriding royalty of one-sixteenth of all oil and gas produced under the lease "or any extension or renewal thereof." This reserved overriding royalty interest was subsequently assigned to appellants. The working interest was subsequently assigned to MTS Limited Partnership (MTS). Appellants claim that "[a]t least one nonproducing well was drilled during the primary term," but they also allege that neither MTS nor its predecessor Mesa Petroleum Co. drilled any well from 1976 to 1982. Apparently, there was no production from the leased area during the primary term of the 1972 lease.
 
 
 3
 In February 1982, prior to the end of the primary term, the mineral owners leased to MTS the same acreage via five separate leases covering 160 acres each. The effective date of these leases was May 20, 1982, the expiration date of the 1972 lease. MTS paid a bonus to the mineral owners of $130,200 for the 1982 leases. The primary term of each lease was three years; there were five leases rather than one; the landowner's royalty was three-sixteenths. Two producing wells were subsequently drilled, one each in 1984 and 1985.
 
 
 4
 Appellants commenced this action in November 1985. Appellants set forth four counts. Count I alleged a breach of the duty of good faith claiming a contractual and fiduciary duty to keep the 1972 lease in force and effect, and sought a declaration that appellants are the owners of a one-sixteenth overriding royalty interest in the 1982 leases. Count II requested a constructive trust and accounting. Count III alleged an intentional and malicious breach of the fiduciary obligation. Count IV alleged a breach of contract, i.e., the terms of the lease assignments.
 
 
 5
 Both parties moved for summary judgment and the district court in a well reasoned memorandum and order dated March 27, 1987, ordered summary judgment to be entered for defendants-appellees. The district court first set forth the uncontroverted facts and reviewed the various assignments and the prior relationship between the parties. Citing cases from several jurisdictions, the court stated that an assignment of an oil and gas lease reserving an overriding royalty generally does not create a confidential or fiduciary relationship. It then concluded that no confidential or fiduciary relationship had been shown or alleged by defendants here.
 
 
 6
 The court also addressed the "extension or renewal" issue, beginning with an explanation of the accepted legal distinctions between "extension or renewal" and "new lease." It then stated that in determining whether a subsequent lease constitutes an "extension or renewal" a court must consider the circumstances surrounding the execution of the leases, the relationship of the parties, whether new consideration was given for the subsequent lease, and the significant similarities and differences in the terms and conditions of the leases. Accordingly, the court reviewed the 1972 lease and the 1982 leases in light of these factors, noting the presence of several materially different terms in the 1982 leases, i.e., three-year rather than ten-year primary term, five leases covering 160 acres each compared to one 800-acre lease, and a landowners' royalty of three-sixteenths instead of one-eighth. The court also found it significant that the defendants paid new consideration in the amount of $130,200 for the 1982 leases. The court concluded the 1982 leases were "new" leases, not "extensions or renewals" of the 1972 lease.
 
 
 7
 Appellants raise six issues on appeal. Fundamentally, however, they urge us to reverse the district court's construction of the 1982 leases as new leases rather than renewals or extensions, and they base that argument on, essentially, two allegations of error. First, they argue that Kansas law controls because jurisdiction is based upon diversity of citizenship, and that the district court thus committed reversible error when it failed to consider the Kansas cases of Campbell v. Nako Corp., 195 Kan. 66, 402 P.2d 771 (1965), and Howell v. Cooperative Refinery Ass'n, 176 Kan. 572, 271 P.2d 271 (1954). They also claim the district court "disregarded a number of other decisions throughout the country recognizing that a working interest owner cannot 'top lease' existing acreage and thereafter extinguish an overriding royalty interest." Appellants' Brief at 9. Secondly, they assert the district court disregarded admissions made by the appellees. We review de novo the grant or denial of a summary judgment motion under the same, familiar standards applied by the district court, Missouri Pacific R.R. Co. v. Kansas Gas & Electric Co., 862 F.2d 796, 798 (10th Cir.1988), and we affirm.
 
 
 8
 * Appellants rely heavily upon Howell v. Cooperative Refinery Ass'n, 176 Kan. 572, 271 P.2d 271 (1954), contending that had the district court considered Howell it would have reached the opposite result here. Factually and procedurally, however, Howell is very different from this case. Howell involved a contract between a geologist and an oil company. The parties agreed to attempt to secure an oil and gas lease; the company would pay the bonus for the lease, which would be taken in the name of the geologist who would assign it to the company and reserve an override. The oil company agreed to drill a well at a specified location. The geologist fulfilled his obligations. The oil company drilled four commercial producers and then refused to drill on specified acreage and released this acreage.
 
 
 9
 Following expiration and release of the first lease, the oil company procured a second lease on the property directly from the owners. The geologist sued, asserting that on the basis of his dealings with the defendant oil company the second lease was a renewal of the first and, accordingly, he was entitled to an overriding royalty on the production therefrom. The defendants demurred on the ground that, inter alia, the petition failed to state a cause of action. The district court overruled the demurrer, and the defendant oil company appealed.
 
 
 10
 In affirming the lower court, the Supreme Court of Kansas predicated its decision upon the existence of a confidential business relationship. The court held that the original contract between Howell and the defendants, by which "the parties [were] to attempt to secure the lease," 271 P.2d at 275 (emphasis in original), "provid[ed] for at least a form of joint interest and joint ownership." Id. Thus, it was this contract, not any subsequent transfer of lease interests, that created a confidential relationship involving mutual duties. 271 P.2d at 275. In fact, the court explained that the "transfer of a lease does not ordinarily create any confidential relationship." Id. at 274 (quoting 24 Am.Jur. at 590). In contrast, in the case before this court there was no confidential or fiduciary relationship demonstrated, nor any evidence of a joint venture. Order at 5; cf. Robinson v. Eagle-Picher Lead Co., 132 Kan. 860, 297 P. 697 (1931). Indeed, there are no allegations by any party of the existence of such a relationship, other than appellants' unfounded suggestion that an assignment itself necessarily creates a fiduciary obligation.
 
 
 11
 With respect to the second lease in Howell, the state supreme court expressly acknowledged that the evidence that might be adduced at trial was unknown, but that "at least so far as the allegations of the petition are concerned ... the second lease is to be construed as a renewal or extension of the former leases." 271 P.2d at 275. In other words, resolution of the question whether the new lease was actually an extension or renewal of the first lease was reserved for trial.
 
 
 12
 In addition to the existence of a confidential relationship in Howell, we note a further factual dissimilarity between that case and this one. Like the lease in Howell, the 1972 lease at issue here provided for extension of the primary term for as long as oil or gas was produced from the leased property. 1972 lease, para. 2; cf. 271 P.2d at 272. In Howell there had been production from leases involving the same parties on the section and half-section adjacent to the lease in question, whereas the record here reveals no production on the property or by any of the parties on adjacent property during the 1972 lease period. This absence of production strongly suggests that appellants' overriding royalty expired with the termination of the 1972 lease in May 1982. See Campbell v. Nako Corp., 195 Kan. 66, 402 P.2d 771, 777 (1965). In light of our conclusion that there was no confidential or fiduciary relationship between appellants and appellees, there is thus no basis for concluding that appellants' override applies to the 1982 leases.
 
 
 13
 We conclude the district court correctly applied Howell. It clearly is not a "controlling precedent" as claimed by appellants.
 
 
 14
 The other Kansas case that appellants claim supports their position is Campbell v. Nako Corp., 195 Kan. 66, 402 P.2d 771 (1965). The appellants in Campbell were holders of a royalty interest in a lease canceled in a prior court action at which appellants did not appear and of which they claimed no actual knowledge. Appellants sought to reopen the judgment in the former case, alleging that the landowners and the controlling faction of Nako Corporation, the current leaseholder, had colluded to obtain the lease forfeiture decree by default, in order to execute a new lease to Nako and deprive appellants of their royalty. The district court denied their application, but the Supreme Court of Kansas reversed, holding that they were entitled to reopen that judgment to defend their interest. 402 P.2d at 779.
 
 
 15
 The Campbell court held that an overriding royalty created by an oil and gas lease falls with the lease upon bona fide forfeiture or surrender of the lease; but if "forfeiture or surrender is obtained by fraud or collusion between the landowner and the lessee for the purpose of avoiding or cutting out the overriding royalty," then the holder of the royalty is entitled to relief against such forfeiture. 402 P.2d at 779. The court defined collusion as an agreement or secret arrangement among two or more persons to defraud a third person of his rights. Id. at 776 (quoting Black's Law Dictionary). The Campbell court acknowledged a "clearly emerging ... duty of fair dealing required on the part of the lessee ... to which doctrine this court has definitely inclined [in Howell ]." Id. at 777. But the relief the court extended to holders of royalty interests under terminated leases was plainly limited to cases involving fraud or collusion.
 
 
 16
 In the instant case, there exists no evidence of either fraud or collusion, nor do appellants allege any instances of this order of bad faith. Appellants state merely that they were "cut out of their rightful share of the production from the acreage." Absent any assertion of fraud or collusion, Campbell is inapplicable to these facts.
 
 
 17
 The remaining cases cited by appellant include Independent Gas & Oil Producers, Inc. v. Union Oil Co., 669 F.2d 624 (10th Cir.1982), and Probst v. Hughes, 143 Okla. 11, 286 P. 875 (1930). We agree with the district court that these cases are distinguishable and unpersuasive. First, the court in each of these cases applied Oklahoma law, which does not govern our decision here. More importantly, in each case the court determined there existed a fiduciary relationship between the assignor and assignee of the lease. Given that circumstance, each court held that a subsequent lease executed by the parties was a "modification, renewal, or extension" of the original lease within the meaning of the assignment. 669 F.2d at 627, 286 P. at 879. There was also evidence of bad faith in each case. 669 F.2d at 627 (court found lessee attempted to cheat royalty holder out of interest); cf. 286 P. at 876-77 (although defendants claimed first lease terminated when well ceased production and was plugged, defendants showed by their acts that they believed a deeper deposit might exist on the property).
 
 
 18
 In this case, there is no evidence of a fiduciary relationship between the appellants (holders of the royalty interest under the various working interest assignments) and MTS partnership (third-generation assignee of the working interest in the lease). Cf. Robinson, 297 P. at 699-701 (court rejected claims that parties' mutual interest in mining enterprise, the accounting for royalties, and possession of confidential information created fiduciary relationship between sublessor and sublessees during renewal or extension of mining lease). For example, appellants have not alleged (nor could they) that their reserved royalty was an important part of the consideration for Mesa Petroleum's assignment of the working interest to MTS. See 669 F.2d at 627. Appellants are simply mistaken in their apparent belief that fiduciary obligations are created under Kansas law by subsequent assignments of the working interest in an oil and gas lease. See Appellants' Brief at 13-17 and Reply Brief at 4-5 (both relying on cases from jurisdictions other than Kansas for the assertion that a fiduciary relationship existed). Contrary to appellants' assumption, see Reply Brief at 4 (stating that Probst is a "controlling precedent[ ]"), Howell did not adopt Probst as Kansas law. See 271 P.2d at 274 (finding it unnecessary to take up each case, including Probst, cited by appellee in Howell ). Thus, Probst and Independent Gas do not help appellants' case.
 
 
 19
 To summarize, the cases cited by appellants are clearly distinguishable from the present case. Howell involved a contractual relationship creating a direct business relationship akin to a joint venture. Cf. Foley v. Phillips, 211 Kan. 735, 508 P.2d 975 (1973). In the instant case, the district court correctly and specifically found that none of the parties alleges that it was a joint venturer or partner of the other. Campbell involved fraud, collusion, or bad faith and recognized the general rule that when a lease terminates by reason of its own terms the royalty interest likewise expires. In the instant case, there exists no such evidence, but only an unfounded suggestion that the top-lease was somehow improper. Independent and Probst turned on the existence of a fiduciary relationship, and the second lease in each case was held to be a modification, extension or renewal of the first.
 
 
 20
 Guided by the district court's well reasoned opinion in this case, we hold that the 1982 leases were new leases, not extensions or renewals of the 1972 lease, and that appellants' royalty expired on May 20, 1982, with the termination of the 1972 lease. We further hold there is no reason to charge the 1982 leases with appellants' extinguished royalty interest, given that there existed no confidential or fiduciary relationship between appellants and appellees; that there has been no allegation of fraud or collusion by appellees; and that the 1982 leases are new leases, not extensions or renewals of the 1972 lease.
 
 
 21
 Appellants urge that this result will "allow companies like Mesa to simply wait until the primary term expire[s], execute a 'new' lease, and cut off the rights of other individuals. This result should not be allowed or sanctioned." But appellants misplace the responsibility for such an outcome. The lease itself, which sets forth no duty to drill but instead provides for deferral of drilling on condition that an annual rental is paid, plainly allows the lessee to "simply wait until the primary term expires" and then enter into a new lease arrangement. On the other hand, the result appellants advocate would effectively prohibit a working-interest owner from acquiring a new lease if there was an outstanding overriding royalty interest in renewals or extensions of the existing lease. We will not create such an irrational impediment to the business of oil exploration and development.
 
 II
 
 22
 Appellants next argue that the court improperly disregarded admissions by the appellees that the 1982 leases were renewal leases. A quotation from the District Court's Memorandum and Order serves to set the stage for the discussion of this issue:
 
 
 23
 Plaintiffs correctly note that certain of defendants' documents executed prior to the commencement of this lawsuit refer to the 1982 leases as "renewals" of the 1972 lease. Defendants counter, also correctly, that plaintiff Gutru has referred to the 1982 leases as "new leases." The court agrees with defendants that lay persons commonly use legal terms interchangeably and do not attach the same significance to these terms as does the legal profession. Plaintiffs' Exhibit P, defendant's "Authority for Expenditure" form, aptly demonstrates this inconsistency. It lists the budget category for the expenditure as "Lease Acquisition,"" and lists no "Previous Appropriations," but states the expenditure is for "[R]enewal" of the acreage. Although evidence of the signatory parties' (i.e., defendant and the McCarty's) intent would appear relevant to the determination of whether a lease is a renewal rather than a new lease, the court finds no clear evidence of the signatory parties' intent in the present case and does not view the parties' prior references to "renewals" or "new leases" as controlling.
 
 
 24
 (Emphasis in original.)
 
 
 25
 Plaintiffs-appellants argued before the district court that no genuine issue of material fact existed and that summary judgment was therefore appropriate. They further asserted that the contract (lease assignment) was unambiguous with regard to the reservation of their royalty, and acknowledged that "it is not necessary to go further" than the language of the contract and the case law to decide their summary judgment motion. On appeal, however, they have executed an apparent about-face on these issues. Now they urge that certain "admissions" of appellees present a genuine issue of material fact as to the intentions of the parties and that summary judgment is inappropriate when an issue of intent is material.
 
 
 26
 Extrinsic evidence of intent is relevant and admissible only when the terms of an agreement are ambiguous. E.g., Mays v. Middle Iowa Realty Corp., 202 Kan. 712, 452 P.2d 279, 284-85 (1969) (finding summary judgment for defendants appropriate despite plaintiff's claims that contract was ambiguous and that oral evidence of parties' intent should have been allowed). That is not the case here. Appellees contend, and we concur, that the assignment provision reserving a royalty in any "extension or renewal" of the lease is clear and unambiguous and the intent evidenced thereby can be determined as a matter of law. As we held in part I, we agree with the district court's explanation of the accepted legal distinctions between "extension or renewal" of a lease and "new lease." Moreover, the facts relating to the execution and terms of the 1982 leases are not in dispute and plainly support the district court's determination that they were "new leases."
 
 
 27
 We do not agree, however, with appellees' suggestion that the parol evidence rule is implicated by appellants' claim that the district court's interpretation of the assignment is contrary to the parties' intent. Under the parol evidence rule, facts and circumstances existing prior to and contemporaneously with the execution of an ambiguous, written agreement are admissible to clarify the intent of that agreement. Stauth v. Brown, 241 Kan. 1, 734 P.2d 1063, 1069 (1987). Here, appellants ask us to consider the significance of statements made by appellees long after execution of the lease assignments. Hence, the parol evidence rule is inapplicable, and cases applying the rule are irrelevant.
 
 
 28
 The issue on appeal is the propriety of the district court's grant of summary judgment to defendants-appellees. The district court properly treated plaintiffs' claim as one for breach of contract (i.e., the working interest assignments), and we have held that claim was correctly decided. As noted above, appellants admitted in their memorandum in support of their motion for summary judgment that evidence of appellees' "admissions" was unnecessary to the resolution of that motion. The instant issue raised by appellants is essentially a separate claim for breach of a different "agreement" (i.e., the appellees' "admissions" that they considered the 1982 leases renewals of the 1972 lease), or perhaps a claim for breach of some duty to deal in good faith. Neither claim, however, was clearly presented to the district court as such. Moreover, we have already held that no confidential or fiduciary relationship between the parties existed by virtue of the assignments alone, and appellants have not alleged any other basis for such a relationship or an attendant duty to deal in good faith. For these reasons, it is both unnecessary and inappropriate for this court to consider further the issue of appellees' "admissions."Accordingly, the order of the district court granting summary judgment in favor of defendants-appellees is AFFIRMED.