No. 77,396

REYNOLDS-REXWINKLE OIL, INC., *Appellee/Cross-appellant,* v. PETEX, INC., *Appellant/Cross-appellee.*
(1 P.3d 909)

Opinion filed March 17, 2000.

*Lee Thompson,* of Triplett, Woolf & Garretson, LLP, of Wichita, argued the cause, and *Rachael K. Pirner,* of the same firm, was with him on the briefs for appellant/cross-appellee.

*Zackery E. Reynolds*, of The Reynolds Law Firm, P.A., of Fort Scott, argued the cause, and *David J. Morgan* and *Todd King*, of Hersberger, Patterson, Jones & Roth, L.C., of Wichita, were on the briefs for appellee/cross-appellant.

The opinion of the court was delivered by

LARSON, J.: The difficult legal question in this appeal is whether an overriding royalty interest held by Reynolds-Rexwinkle Oil, Inc., (Reynolds) in an oil and gas lease terminated upon expiration of the lease or whether it extended to a subsequent oil and gas top lease on the same acreage negotiated by the assignee of the initial lease, Petex, Inc., (Petex) and the landowners.

The trial court ruled the later oil and gas lease was burdened by Reynolds' overriding royalty interest, granted Reynolds' motion for summary judgment, and ordered prejudgment interest. Petex appealed. Reynolds cross-appealed the denial of its claim for attorney fees.

The Court of Appeals reversed the trial court on the overriding royalty issue and remanded for a determination of whether fraud, collusion, or bad faith on the part of Petex could be proved. *Reynolds-Rexwinkle Oil, Inc. v. Petex, Inc*, 25 Kan. App. 2d 707, 969 P.2d 906 (1998). We granted Reynolds' petition for review.

*Factual background and legal proceeding*

The trial court granted summary judgment on what are essentially uncontroverted facts, with the following being material to the issues we consider.

On February 5, 1992, Herman and Loretta Schippers granted Hess, Inc., an oil and gas lease covering the northeast quarter (NE/4) of section 8, Township 11 South, Range 32 West in Logan County, Kansas. The lease was for a 1-year term; consideration was $1,000; the lease reserved a ⅛th royalty interest and an additional overriding royalty of ⅟₃₂nd of ⅞ths; and an attached option allowed the lease to be extended for an additional term of 1-year by paying a delay rental of $6.25 multiplied by the number of net mineral acres owned by the lessors.

On February 5, 1992, Hess, Inc., assigned all of its right, title, and interest in and to the above-described oil and gas lease to Reynolds. Reynolds paid the Schippers the $1,000 required by the

option to extend and thereby extended the term of the lease to February 5, 1994.

Daniel M. Reynolds, an officer and principal of Reynolds knew Larry Childress, an officer and principal of Petex, from a casual introduction in previous years. Mr. Reynolds called Mr. Childress and offered to sell Petex the Schippers oil and gas lease described above for $1,000 and a reserved 1.5% of ⅝ths overriding royalty interest. Mr. Reynolds used geological information to make the oil and gas lease attractive to Petex and offered to share his geological maps with Mr. Childress, but this offer was refused.

The only other conversation between the parties prior to the assignment of the Schippers oil and gas lease was Mr. Childress' call back to Mr. Reynolds on the same day accepting the offer to purchase the Schippers lease for the terms offered by Mr. Reynolds.

Pursuant to the agreement, Reynolds, on May 14, 1993, assigned all of its right, title, and interest in and to the original Schippers oil and gas lease to Petex with the assignment containing the following provision:

"The Assignor herein hereby expressly excepts, reserves, and retains title to an undivided 1.5% of 8/8ths of all oil, gas, and casinghead gas produced, saved, and marketed from the described land under the provisions of the aforesaid lease, *or any extension or renewal thereof,* as an overriding royalty, free and clear of any cost and expense of the development and operation thereof, excepting taxes applicable to said interest and the production therefrom." (Emphasis added.)

The only business arrangement between Reynolds and Petex was the assignment of the original Schippers oil and gas lease.

On August 30, 1993, prior to the expiration of the extended term of the existing oil and gas lease, the Schippers and Petex entered into a new oil and gas lease covering the same acreage with the second lease to take effect February 6, 1994, the day after the expiration of the extended term of the original lease. The terms of the second lease were substantially similar to the initial Schippers lease. A ⅛th royalty interest and ¹⁄₃₂nd of ⅞ths overriding royalty interest was reserved by the Schippers, the second lease provided for an additional years' term upon payment of a $800 delay rental, and the sum of $800 was paid as consideration for the lease. The

second lease contained no mention of the overriding royalty interest reserved by Reynolds in the earlier lease.

During the primary and extended term of the original Schippers lease, no oil or gas development or exploration activities were carried out by any of the parties. Petex began seismic and geological work on the acreage in October 1994, and around November 18, 1994, commenced drilling of an oil test well which was completed as a producing oil well on or about January 6, 1995.

In December 1994, Reynolds filed an affidavit claiming an overriding royalty interest in production from the Schippers property. In March 1995, Reynolds demanded payment of the overriding royalty, which was denied by Petex.

The record reflects that litigation was commenced in Greene County, Missouri, but that jurisdiction was found to exist in Kansas by our Court of Appeals. Questions concerning jurisdiction were not the subject of the petition for review we considered and need not be discussed herein.

Reynolds sought recovery in Kansas from Petex on the grounds that (1) the second lease was an extension or a renewal of the original lease; (2) Petex had breached the terms of the assignment of the initial oil and gas lease it received; and (3) Petex had breached its duty of good faith and fair dealing. Additionally, Reynolds claimed attorney fees and interest pursuant to K.S.A. 55-1614 *et seq.*

Petex's answer essentially admitted the execution of the legal documents in issue, but denied Reynolds was entitled to an overriding royalty on oil and gas production on the subject property.

The parties filed cross-motions for summary judgment. In its motion, Reynolds acknowledged that an overriding royalty interest normally expires with the expiration of the oil and gas lease out of which it is carved, but claimed there are exceptions to this rule (a) where the lease assignment contained an extension/renewal clause, and (b) where the lessee or assignee acted in bad faith or breached a duty of fair dealing owed to the holder of the overriding royalty interest. Reynolds argued that when Petex took the second lease, it was with the intention of destroying or washing out Reynolds' overriding royalty interest and that either through the construction

of the assignment or the facts regarding the taking of the second lease, the overriding royalty properly existed. Reynolds denied that any confidential or fiduciary relationship was needed in order for it to recover under either exception.

Petex argued that in the absence of a confidential relationship, which it claimed did not exist in this instance, or evidence of collusion, fraud, or bad faith, that an overriding royalty interest always ends with the expiration of the oil and gas lease which it burdens. Petex claimed that Reynolds had not alleged any special circumstances and, accordingly, its overriding royalty interest expired when the initial term of the Schippers lease expired. Additionally, Petex argued the two leases involved were materially different and that Reynolds was not entitled to interest, attorney fees, or costs.

The trial court held: (1) There was no fiduciary or confidential relationship between the parties and that the parties dealt at arms length; (2) the recasting of advanced lease payments as delay rentals (in comparing the leases) was a distinction without real difference; (3) *Lillibridge v. Mesa Petroleum Co.*, 907 F.2d 1031 (10th Cir. 1990), was distinguishable, because *Lillibridge* involved not one, but several, distinct subsequent leases following the expiration of the primary lease; (4) the retained overriding royalty was part of the consideration for the assignment and it would be "wrong" to allow Petex to unilaterally terminate that bargained-for consideration simply by negotiating a top lease; and (5) the top lease was an extension or renewal of the original lease and Reynolds-Rexwinkle was, therefore, entitled to an overriding royalty. The court denied Reynolds-Rexwinkle's claims to attorney fees under K.S.A. 55-1614 *et seq.*, but ordered prejudgment interest pursuant to K.S.A. 16-201. Costs of the action were assessed against Petex pursuant to K.S.A. 60-2002.

Petex appealed, essentially reiterating its trial court arguments. Reynolds cross-appealed challenging the trial court's refusal to grant costs and attorney fees.

The Court of Appeals affirmed the acceptance of Kansas jurisdiction but reversed and remanded on the issue of the effect of the extension and renewal clause on the assignment, and held the reversal required that the order assessing court costs and attorney

fees be vacated as premature. In reversing, the Court of Appeals held that

"absent a contract provision that an overriding royalty interest in an oil and gas lease survives a subsequent top lease, a top lease extinguishes the overriding royalty interest, unless the holder of the overriding royalty interest proves a breach of duty of fair dealing by showing that the lessor committed fraud, collusion, or bad faith in granting the top lease. The district court erred in granting summary judgment when it failed to require Reynolds-Rexwinkle to prove that Petex's actions were fraudulent, collusive, or in bad faith." 25 Kan. App. 2d at 715-16.

We accepted Reynolds' petition for review. Reynolds contends the Court of Appeals erred in its finding that an overriding royalty interest holder must show that an assignee of the leasehold interest committed collusion, fraud, or bad faith under the uncontroverted facts of this case. Reynolds argues the Court of Appeals unnecessarily established a new and different rule in the case of top leases, and Reynolds suggests that only the extension and renewal language should have been utilized to declare the overriding royalty a burden on the subsequent lease.

Petex did not file a cross-petition for review of any of the issues decided by the Court of Appeals. See Rule 8.03(a)(5)(c) and (b)(1) (1999 Kan. Ct. R. Annot. 53).

*Standard of Review*

Both parties sought summary judgment. The case was submitted on what the trial court determined were undisputed facts. Only the legal effect of the parties' actions is an issue here. The determination of the issues we face involve the interpretation of written instruments and the legal effects of undisputed facts surrounding their execution which raise questions of law over which we exercise unlimited review. *In re Estate of Van Der Veen*, 262 Kan. 211, 212, 935 P.2d 1042 (1997); *Kneller v. Federal Land Bank of Wichita*, 247 Kan. 399, 400, 799 P.2d 485 (1990).

*Glossary of terms*

Oil and gas terms have well-known definitions which we first set forth to aid in our discussion and analysis of the issues before us.

An *overriding royalty interest* is "a royalty interest carved out of the working interest created by an oil and gas lease. It is an interest

in oil and gas produced at the surface free of the expense of production and its outstanding characteristic is that its duration is limited by the duration of the lease under which it is created." *Campbell v. Nako Corporation*, 195 Kan. 66, Syl. ¶ 2, 402 P.2d 771 (1965).

A *working interest* is the operating interest under an oil and gas lease. The owner of the working interest has the exclusive right to export the minerals on the land. It is an interest in oil and gas that is burdened by the cost of development and operation of the property. Williams and Meyers, Manual of Oil and Gas Terms 839, 1377 (8th ed. 1991).

A *top lease* is an oil and gas lease granted by a landowner during the existence of a recorded mineral lease which is to become effective if and when the existing lease expires or is terminated. Williams and Meyers, Manual of Oil and Gas Terms 1285 (8th ed. 1991).

A *washout* is the "[e]limination of an overriding royalty or other share of the working interest by the surrender of a lease by a sublessee or assignee and subsequent reacquisition of a lease on the same land free of such interest." Williams and Meyers, Manual of Oil and Gas Terms 1340 (8th ed. 1991).

An *extension and renewal clause* is a clause included in an instrument which creates an overriding royalty or oil payment out of the working interest to protect against a washout. In effect, the clause provides that the interest shall apply and be a part of all future renewals or extensions of the lease. Williams and Meyers, Manual of Oil and Gas Terms, 431 (8th ed. 1991).

*Allegations of Petex*

Petex contends the facts show no confidential relationship between the parties and that it owed no fiduciary duty to Reynolds. Reynolds has not alleged any fraudulent conduct by Petex nor is there a claim of collusion on the part of Petex and the landowners. Consequently, Petex's basic claim is that we must recognize and apply the rule that the duration of an overriding royalty is limited

by the oil and gas lease under which it is created. *Campbell v. Nako Corp.*, 195 Kan. 66, Syl. ¶ 2.

Petex primarily relies on *Drilling, Inc. v. Warren*, 185 Kan. 29, 340 P.2d 919 (1959), where the court found a duty of good faith existed in a situation where an operator acquired a second lease after having earlier held a lease burdened by an overriding royalty interest. It was not contended that the second lease was an extension or renewal of the first lease, and despite wording in the assignment that the overriding royalty shall be deemed a covenant running with the land and binding upon successors and assigns of the parties, we held that "[w]e cannot therefore construe 'covenant running with the land' to mean that the overriding royalty applied to production under any unrelated new lease subsequently acquired, in good faith, on the same property." 185 Kan. at 35.

Petex argues that the only other exceptions to the well-settled rule that an overriding royalty has no duration beyond the life of the underlying lease it burdens were stated in *Howell v. Cooperative Refinery Ass'n*, 176 Kan. 572, 271 P.2d 271 (1954), where the parties' agreements created a confidential relationship in the nature of joint interests and joint ownership, and in *Campbell*, 195 Kan. 66, where there was an allegation of bad faith, fraud, and collusion between the assignee and the lessor. Petex claims that neither circumstance exists here.

The other case relied on by Petex is *Lillibridge v. Mesa Petroleum Co.*, 907 F.2d 1031, where an overriding royalty was held not extend to "new" leases because there were several, rather than one, lease; a larger landowner royalty; a 3-year rather than a 10-year term; and new consideration of $130,200 for the new leases. Petex argues the top lease it took from the Schippers was similar to the situation in *Lillibridge*.

Finally, Petex argues there was no evidence in the sale of the first lease that the overriding royalty interest was to continue in perpetuity.

### Allegations of Reynolds

Reynolds first argues that a duty of fair dealing exists between an assignee and an overriding royalty holder. Reynolds relies on a

statement in *Campbell* that in controversies between the lessee and the overriding royalty holder "there seems [to be] clearly emerging a duty of fair dealing required on the part of the lessee (see 2 Williams and Meyers, Oil and Gas Law, § 420.2 [1999]) to which doctrine this court has definitely [been] inclined [to follow] (*Howell v. Cooperative Refinery Ass'n*, 176 Kan. 572, 271 P.2d 271)." 195 Kan. at 73.

Reynolds further contends that while *Campbell* established the rule that fraud or collusion would prohibit a washout, there does not have to be fraud or collusion in order for a duty of fair dealing to exist between the parties. Reynolds contends that the early Kansas case of *Matthews v. Ramsey-Lloyd Oil Co.*, 121 Kan. 75, 245 Pac. 1064 (1926), protected a nonoperating interest in spite of the assignment of the lease back to the lessor by holding that "[e]quity would not countenance a merger of interests by Ramsey to the prejudice of plaintiff." *Campbell*, 195 Kan. at 73 (citing *Matthews*, 121 Kan. at 82).

Reynolds then points to the language this court quoted in *Howell* in explaining the duty of good faith and fair dealing an operator-assignee owes the overriding royalty interest-assignor. We said in *Howell*:

"The cases have been examined, and in our opinion the proper conclusion to be drawn from them is fairly stated in 24 Am. Jur. [Gas and Oil] 590, where it is said:

" '§ 82. Relationship Arising from Transfers.—While the transfer of a lease does not ordinarily create any confidential relationship between the parties, this is not, of course, always the case. The terms of the conveyance may be such as to impose upon the assignee or sublessee the duty of protecting the interests of the assignor or sublessor; and, whenever they are of such character, he must comply with the general rules that govern the conduct of persons occupying a trust status, and any effort on his part to procure from the lessor rights antagonistic to those of the assignor will be defeated. *Thus, when an assignment expressly provides that any extension or renewal of the lease shall be subject to the overriding royalty therein agreed upon, the courts will regard a new lease procured by the assignee as an extension or renewal of the old one and charge it with the royalty so reserved,* even though it was not granted until production under the former lease had come to an end.' " (Emphasis added.) 176 Kan. at 576.

The language of the last sentence of this quote, literally applied, would compel judgment for Reynolds under the facts of our case.

Reynolds next points out that in taking the top lease, Petex was blatantly attempting to "washout" the overriding royalty interest and claims this "involves some bad faith on the part of the operator, [and] seems to call for added protection from the courts." *Fiduciary Protection of Nonoperating Oil and Gas Interests Against the Acts of an Operator*, 18 Tulsa L. J. 496, 500 (1983).

Reynolds, citing *Howell, Otter Oil Co. v. Exxon Co., U.S.A.*, 834 F.2d 531, 533 (5th Cir. 1987), and *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 319 (5th Cir. 1991), claims that case law and scholarly opinion agree that "washout" actions are a violation of fair dealing and that the overriding royalty owner must be protected through strongly enforced extension and renewal clauses.

Finally, Reynolds notes *Lillibridge* is not binding on state courts and criticizes its reasoning and the result which relied on the Texas decision of *Sunac Petroleum Corp. v. Parkes*, 416 S.W.2d 798 (Tex. 1967). Reynolds also attempts to minimize *Lillibridge's* authority through the following statement from Note, *Protecting Overriding Royalty Interests in Oil and Gas Leases: Are the Courts Moving to Washout Extension or Renewal Clauses?* 31 Washburn L.J. 544, 563 (1992):

"Thus, *Lillibridge* opens the door for those operators who can get their case into federal court to evade the obligations of an extension or renewal clause included in a lease assignment. The only requirement is that the operator must obtain a second lease on terms substantially different from those of the original lease."

Reynolds also asserts *Lillibridge* is factually distinguishable because there was no extra bonus paid here or increased royalty as there was in *Lillibridge*. In addition, the terms of the second leases in *Lillibridge* were for 3 years, not 10 as in the first; and the number of leases in *Lillibridge* was 5 rather than the one first lease. In our case, the first and second Schippers' lease are substantially similar.

Reynolds also asserts *Drilling, Inc.*, is factually distinguishable because in that case, a third party obtained the new lease (it was not a top lease as exists here), and there was a specific factual finding of no bad faith on the part of the operator who eventually reacquired the lease.

*Analysis*

The relationship between operating and nonoperating interests in oil and gas exploration and development is fraught with potential disputes because they arise out of a leasehold estate. While some agreements do set out with specificity the respective rights of the parties, in many instances (like the one we face here), courts are left with the difficult task of determining the scope and extent of protections to afford nonoperators (overriding royalty holders) against the acts of operators that either intentionally or inadvertently extinguish the nonoperating interests.

Rather than first attempting to either distinguish or harmonize the Kansas cases with cases from other jurisdictions that have dealt with this precise issue, we first turn to the general statements of the treatise writers who have summarized the issue we face.

Professor Kuntz describes the problem in this manner:

"Occasionally the instrument by which the interest is created may provide that the overriding royalty will apply to modifications, renewals, and extensions of the lease. As a matter of theory, the overriding royalty should apply to any modifications or extensions that are made while the lease is in full force and effect, with or without such special provision. In such a situation, the lease out of which the interest was carved still exists, and there is no reason why it should not continue to be subject to the overriding royalty. Any 'extension' made after the lease has terminated or otherwise has come to an end, on the other hand, is in substance a new lease on the same terms as the old, and the overriding royalty will not be preserved in the absence of such special provision. It is in such a situation that the special provision relating to renewals or extensions becomes important.

"It has been recognized that the purpose of a provision that the overriding royalty is to apply to renewals and extensions is to prevent a 'washout' and to preserve, in any new lease, the same rights that would have been enjoyed in the existing lease. When such provision does appear, it may be necessary to determine if a new lease is in effect an extension or renewal of the old lease. It has been held that a new lease which contained substantially different terms and was granted under different circumstances one year after the expiration of the old lease is not a renewal and that the clause has no application to a subsequent lease acquired by assignment. 1 It has been held that a new lease acquired from the lessor by the lessee while the old lease is in effect and the lessee has continued to occupy the premises is an extension of the lease for purposes of such provision and that the new lease will be subject to the overriding royalty. 2 It has also been held that a new lease is an renewal or extension even though it was acquired over

a year after the expiration of the old lease, where the parties were negotiating for the new lease during that time. 3" Kuntz, Oil and Gas § 63.2, p. 229-230 (1991).

*Drilling, Inc.,* 185 Kan. 29, is cited under footnote 1, while *Howell,* 176 Kan. 572, is the authority for footnote 3.

Another authority has this to say about the issue at hand:

"However, a number of cases evidence a tendency to give some protection to the owner of a nonoperating interest [an overriding royalty] under a lease which is permitted to expire by the operator who takes a new lease, at least where the new lease is taken during the life of the prior lease. 3 [exactly the facts in our case].

". . . The increasing use of extension and renewal or reassignment clauses in instruments creating nonoperating interests will perhaps make it more difficult to persuade a court to find a duty of fair dealing to protect the nonoperating interest from washout in the absence of such express clause since informed parties, dealing at arms length, may be expected to include the provision if such be their intent. 5" 2 Williams & Meyers, Oil & Gas Law § 420.2, pp. 363-65 (1999).

Among the 13 cases cited as authority for footnote 3 are *Matthews v. Ramsey-Lloyd Oil Co.,* 121 Kan. 75, 245 Pac. 1064 (1926), and the Court of Appeals opinion of *Reynolds-Rexwinkle Oil, Inc. v. Petex, Inc.* However, in footnote 5 the following statement is made:

"The mere fact that the assignment contains an extension and renewal clause does not necessarily mean that the override will attach to a new lease taken on the same premises. *K & E Drilling, Inc. v. Warren,* 185 Kan. 29, 340 P.2d 919, 11 *O.&G.R.* 4 (1959) (holding that a new lease was not an extension or renewal of the prior lease from which the override had been carved)." 2 Williams & Meyers, Oil & Gas Law § 420.2, p. 365 n.5 (1999).

The third principal oil and gas treatise states:

"[W]here the assignment of a lease expressly provided that the reservation of an overriding royalty should apply to extensions, renewals or modifications of the lease that the assignee or his successors might secure, it was held that such provision created a relation of trust and confidence between the assignor and his assignees permitting the assignor to payment of the overriding royalty reserved in the assignment out of oil and gas produced under the second lease. 64" 3 Summers, Oil & Gas § 554, p. 637-639 (1958).

One of the cases cited in footnote 64 is *Howell,* 176 Kan. 572.

Perhaps the most helpful of the discussions of the issue is that of Professor David E. Pierce in 1 Pierce, Kansas Oil and Gas Handbook § 7.15 (1991), where he instructs that, in Kansas, two attacks

have been advanced by nonoperating interest holders against "washout" conduct: (1) express provisions in the document creating the nonoperating interest to protect against such conduct; and (2) assertion of fiduciary duties between the lessee and the nonoperating interest owner.

Citing *Robinson v. Eagle-Picher Lead Co.*, 132 Kan. 860, 297 Pac. 697 (1931), Professor Pierce points out that Kansas courts have generally held that the relationship between working interest owners and nonoperating owners is nonfiduciary. Although he notes that even in *Robinson* it is stated that had the sublease there contained a clause making the override apply to modifications, renewals, or extensions of the sublease, a fiduciary relationship may have been created, citing *Probst v. Hughes*, 143 Okla. 11, 13, 286 Pac. 875 (1930).

The Kansas case most discussed by Professor Pierce is *Howell*, 176 Kan. 572, where the assignment creating the overriding royalty contained or "extension or renewal" clause. Pierce notes the opinion defined a confidential relationship and adopted the general rule relating to the assignor/assignee relationship from 24 Am. Jur., Gas and Oil § 82.

" 'Thus when an assignment expressly provides that any extension or renewal of the lease shall be subject to the overriding royalty therein agreed upon, the courts will regard a new lease procured by the assignee as an extension or renewal of the old one and charge it with the royalty so reserved, even though it was not granted until production under the former lease had come to an end.' " *Howell*, 176 Kan. at 576.

Pierce then notes that despite this statement, the ultimate holding in *Howell* was based on the entire transaction between Howell and Cooperative Refinery Association, which was held to have become a joint interest in development and a confidential relationship between the parties in turn, resulting in the overriding royalty attaching to the later lease even though there was a 1-year lapse between the termination of the original lease and the acquisition of the new lease. Professor Pierce concludes:

"The court's statements in *Robinson v. Eagle-Picher Lead Co* and *Howell v. Cooperative Refinery Ass'n* suggests the importance of the 'extension and renewal' clause in assignments and subleases. Not only will it provide some express

contractual guidance on the duration of the nonoperating interest, it will also, under appropriate factual circumstances, give rise to fiduciary obligations between the assignor/assignee or sublessor/sublessee. A sample extension and renewal clause follows:

> "The obligation to pay the overriding royalty required by this assignment shall exist for the life of the oil and gas lease plus any extensions or renewals of the lease. For purposes of this Section, any leasehold interest acquired by assignee within _____ years following the termination, cancellation, or surrender of the oil and gas lease shall be deemed an 'extension or renewal.'

"See *K & E Drilling Inc. v. Warren*, 185 Kan. 29, 340 P.2d 919 (1959)." 1 Pierce, Kansas Oil and Gas Handbook § 7.15 p. 7-20 (1991).

The precise issue we face has been the subject of a recent law journal article, Ney, Note, *Protecting Overriding Royalty Interests in Oil and Gas Leases: Are the Courts Moving to Washout Extension or Renewal Clauses?* 31 Washburn L.J. 544 (1992). It emphasizes the holding in *Lillibridge v. Mesa Petroleum Corporation*, 907 F.2d 1031 (10th Cir. 1990), and after suggesting that the *Lillibridge* opinion relies on the reasoning of the case of *Sunac Petroleum Corporation v. Parkes*, 416 S.W.2d 798 (Tex. 1967), rather than the Oklahoma case of *Probst*, 143 Okla. 11, or the Kansas case of *Howell*, 176 Kan. 572, the note suggests:

> "*Lillibridge* greatly narrows the scope of protection provided by an express extension or renewal clause, at least in the Tenth Circuit. Unless the terms and conditions of the second lease are essentially the same as those of the original lease, the Tenth Circuit Court of Appeals will not give effect to an extension or renewal clause." 31 Washburn L.J. at 563.

The note recognizes that the expressed concern of *Lillibridge* appears to be that protecting overriding royalty interests would prevent operators from acquiring new leases on property covered by an existing lease with an attaching overriding royalty interest in extensions and renewals because the circuit court states "we will not create such an irrational impediment to the business of oil exploration and development." 907 F.2d at 1036. In its conclusion, however, the note suggests:

> "Courts should recognize that the purpose and intent behind the inclusion of an extension or renewal clause is two-fold. First, the clause as a contract term represents the direct express intent of the parties to prevent washouts. Secondly,

courts should also recognize and give effect to the underlying intent to impose heightened or fiduciary obligations on the relationship." 31 Washburn L.J. at 571.

Two recent law review articles that deal with the issue are somewhat less helpful. The latest, Fenk, Comment, *"Are Overriding Royalty Interests Becoming the Clay Pigeons of the Texas Oil and Gas Industry? The Assignor—Assignee Relationship after Sasser v. Dantex Oil & Gas,"* 5 Tex. Wes. L. R. 231 (1999), analyzes primarily Texas cases that are, as a general rule, likely to interpret extension or renewal clauses extremely narrowly following *Sunac*. The other article, Schooley, Comment, *Fiduciary Protection of Nonoperating Oil and Gas Interests Against the Acts of an Operator*, 18 Tulsa L.J. 496 (1983), although giving consideration to Kansas and Texas cases, is more focused on the Oklahoma cases such as *Probst* previously cited herein, and *Rees v. Briscoe*, 315 P.2d 758 (Okla. 1957), that find a fiduciary obligation exists that results in the protection of the nonoperating interest in cases with facts like ours.

The Tulsa Law Journal comment does suggest that "recognizing that the inclusion of an extension and renewal clause is generally some evidence of an intent to create a fiduciary relationship [and], courts should give these protective clauses a broad reading." 18 Tulsa L.J. at 514.

The comment also points us to the statement in McClintock, *Legal Relations Between Lessees and Owners of Interests Carved Out of Leases*, 7 Rocky Mtn. Min L. Inst. 139, 154 (1962), that "[t]he question of whether a fiduciary relationship exists does not seem too important and the real purpose of the court is to determine the intention of the parties." 18 Tulsa L.J. at 514 n.109.

Before we turn to other Kansas cases, we examine briefly certain cases from other jurisdictions in which we can find no common thread upon which to rely.

In many of the cases an extension and renewal clause has not been found in the document creating the overriding royalty interest, and in those cases courts have been hesitant to protect the nonoperator. See *Keese v. Continental Pipe Line Company*, 235 F.2d 386 (5th Cir. 1956); *Goocey v. Hopkins*, 206 Ky 176, 266 S.W. 1087 (Ky App. 1924).

However, in other cases, courts have increased protection for nonoperators even in the absence of a protective clause in the transfer agreement. Such situations include joint ventures, *Carroll v. Caldwell*, 12 Ill. 2d 487, 498-99, 147 N.E.2d 69 (1957); *Bolin v. Smith*, 294 S.W.2d 280, 284-85 (Tex. Civ. App. 1956); federal oil and gas leases, see 18 Tulsa L.J., 505 n.61; and mergers of interests, see *Page v. Fees-Krey, Inc.* 617 P.2d 1188, 1195 (Colo. 1980).

We have previously discussed the Kansas cases *Howell*, *Drilling, Inc.*, and *Campbell* and also the Tenth Circuit case *Lillibridge* that the parties to this appeal rely on or distinguish. While each is helpful, each is somewhat different factually from our case.

We view *Howell* as most helpful to the result we reach. While the ultimate decision there was based on the confidential relationship in the form of a joint enterprise between the holder of the overriding royalty and the operator obtaining the second lease, we consider the following language from that opinion extremely important:

"The cases have been examined, and in our opinion the proper conclusion to be drawn from them is . . . .

'when an assignment expressly provides that any extension or renewal of the lease shall be subject to the overriding royalty therein agreed upon, the courts will regard a new lease procured by the assignee as an extension or renewal of the old one and charge it with the royalty so reserved . . . .' " 176 Kan. at 576.

This is strong language and clearly precedent to require that the overriding royalty of Reynolds attached to the second lease that was obtained by Petex during the time the first lease was in full force and effect.

Even though *Drilling, Inc.*, reaches a result that is favorable to Petex's arguments, we discount its specific authority for two reasons. First, the extension and renewal clause was not precisely in issue as the "covenant running with the land" argument was the basis for the overriding royalty holder's attempt to perpetuate its rights in the property. 185 Kan. at 35. Second, and most important, the subsequent lease was not a top lease acquired while the first lease was still in effect.

We do not believe the holding in *Campbell* is helpful to either party to this appeal since the opinion more precisely involved the right to set aside and defend a default judgment. *Campbell* holds that where there is fraud, bad faith, or collusion in cancelling an oil and gas lease to extinguish an overriding royalty interest, a court of equity will grant relief to allow the holder of the overriding royalty interest to defend against such a forfeiture or surrender. There is no bad faith, fraud, or collusion here, and *Campbell* is not helpful except for the statement relied on by Reynolds that "there seems clearly emerging a duty of fair dealing required on the part of the lessee . . . to which doctrine this court has definitely inclined." 195 Kan. at 73.

Finally, with regards to *Lillibridge* we note that in *KPERS v. Reimer & Koger Assocs, Inc.* 262 Kan. 635, 669-70, 941 P.2d 1321 (1997), we stated that federal decisions on issues of state law are not binding on and have limited precedential effect in state courts. Nevertheless, *Lillibridge* is an important decision and deserves our consideration.

Essentially, the facts that drove the result in *Lillibridge* were that there was no fraud, collusion, bad faith, or breach of fiduciary duty, and the second leases were deemed to be "new" leases rather than extensions or renewals because (1) there were several leases (five rather than one); (2) a larger landowner royalty was required in the later leases (3/16ths rather than ⅛th); (3) the later leases had a 3-year term rather than a 10-year term; and (4) there was new consideration of $130,200 paid for the later lease. 907 F.2d at 1033.

We find *Lillibridge* factually different and not authority to require the result that either party to this appeal champions.

*Conclusion*

We hold the Court of Appeals erroneously reversed and remanded to require Reynolds to prove either fraud, collusion, or bad faith. The undisputed facts do not show that Petex was guilty of fraud, collusion, or bad faith. Nevertheless, the fact Petex took the second lease while the original lease it held was still in full force and effect requires a ruling that the overriding royalty of Reynolds

attaches to the later lease. But, this is because of the extension and renewal language in the assignment and not due to any finding of bad faith on Petex's part.

Although Petex points to small differences in the language, the fact is the second lease is substantially identical to the first lease it replaced. The royalty was the same, the overriding royalty the landowners reserved was the same, the term was not substantially different, and the lease is, as a matter of law, considered and held to be an extension and renewal of the initial lease Reynolds assigned to Petex.

We look to the language quoted earlier from Kunz, Williams & Meyers, Summers, and Pierce. The general language from each treatise would require, under the facts we face here, the protection of the overriding royalty reserved in the Reynolds-to-Petex assignment. The terms of the lease specifically state that the overriding royalty applies to extensions and renewals, and we hold the second Schippers' lease was such an extension and renewal as a matter of law.

We agree with and follow our statement in *Campbell* that a duty of fair dealing exists under the facts of this case. This duty, coupled with the "extension or renewal" wording of the assignment, and the taking of the subsequent lease while the first one was in full force and effect compels a ruling, as a matter of law, that the overriding royalty interest of 1.5% of 8/8ths applies to and burdens the second oil and gas lease upon which production was obtained.

The Court of Appeals is reversed for the reasons herein stated. The trial court is affirmed.

The trial court's ruling that interest is allowable is not properly before this court and is, therefore, allowed to stand notwithstanding the correct statutory basis for the allowance of interest is K.S.A. 55-1614 *et seq.*, rather than K.S.A. 16-201.

The trial court's ruling that attorney fees should not be allowed is affirmed.

This case is remanded to the trial court to enter a money judgment in favor of Reynolds and against Petex for such amount as is determined to be due and owing.

ABBOTT and DAVIS, JJ., not participating.
FRED S. JACKSON, Senior Judge, assigned.